NIRDLINGER *et al. v.* BERNHEIMER.

(*Supreme Court, General Term, First Department.* October 24, 1890.)

EQUITY—LACHES—ABANDONMENT.

In 1855, an agreement to purchase, improve, and sell lands was entered into by several persons, each of them to contribute a proportionate share of the money required, as called for by three of them who took title to the land and managed the property, profits to be divided in the same proportion. A large loss was incurred; and about 1869 or 1870, the lands were conveyed to one of the associates, defendant B., solely, who was to hold the title in trust for the benefit of all. He sold portions of the land and received the proceeds. In 1859, after a settlement by arbitration of differences between one of the associates, J. N., and his brother, F. N., arising out of a partnership which had existed between them, they made a written agreement declaring that "all the interest which the said J. may hold in real estate * * * is held by him for the equal benefit of each of the undersigned, subject to the conditions and provisions of any agreement which said J. may have made or shall hereafter make with others, as joint owners, and all payments and assessments made and to be made shall be equally borne by us, individually, share and share alike." This agreement was not communicated to the other associates; and accounts of receipts and disbursements were rendered, once a year, by B. to J. N. Neither J. N. nor F. N. contributed anything to the expenses of the enterprise, after the agreement between them. J. N. became bankrupt in 1878, and, in the schedules filed by him, made no claim to an interest in the lands; and he testified that this omission was because he did not regard his interest as of any value. There was proof of declarations by F. N. disclaiming any interest in the enterprise, and stating that he regarded it as a losing investment. F. N. died, intestate, in 1873. In 1882, a profit having then resulted from the enterprise, the administrator and heirs of F. N. brought suit for an accounting by B. of the proceeds of the lands sold, and for the conveyance of so much as they might be entitled to of the lands remaining unsold. *Held,* that there had been a complete abandonment of their interest in the enterprise, and equity would not allow them to maintain such a claim. DANIELS, J., dissenting.

Appeal from judgment on report of referee, and motion for a new trial.

Action by Hannah Nirdlinger and others, administrator and heirs of Frederick Nirdlinger, deceased, against Isaac Bernheimer and others, for an accounting of the proceeds of lands sold by said defendant Bernheimer, and for a conveyance of a portion of other lands, the title to which was alleged to have been held by him, for plaintiffs and others made defendants in the action. An interlocutory judgment for plaintiffs was entered on the report of a referee, and defendant Bernheimer appeals therefrom, and also moves for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Charles P. Daly* and *George H. Yeaman,* for appellant. *James W. Hawes,* for respondents.

DANIELS, J. The action was brought to secure an accounting concerning dealings in real estate located in the state of Minnesota. In or about the year 1855 seven different persons entered into an agreement, or understanding, for the purchase, improvement, and sale of the lands, at their joint expense, and for their individual profit and advantage. The moneys used to obtain the title to the lands were contributed to the extent of one-third by the defendant Bernheimer and two other persons engaged in business with him, as partners, and to the extent of one-third by the three members of the firm of Arnold, Nusbaum & Nirdlinger, and the other third was contributed by Mayor Arnold. The moneys contributed to the enterprise by Arnold, Nusbaum & Nirdlinger seem to have been intended more especially for the benefit of Jacob Nirdlinger the third member of this firm, and his contributions are stated by himself, in his evidence as a witness, to have amounted to the sum of about $33,000. The moneys were invested in the lands, and for the improvement of a portion of the property, and the improvement consisted in the building of a village which was afterwards destroyed by fire, and a large loss in this manner encountered by the associates. The title to

the land was first taken in the name of three of the associates, and then vested in two of them, and, finally, about the year 1869 or 1870, it was conveyed solely to the defendant Bernheimer. When the title was obtained and vested in three of the associates, as well as when it became vested in two of them, agreements were entered into declaring that the title was held in trust for the benefit of these associates, each one of six being entitled to one-ninth of a part of the land, and to one-seventh of the residue, and it was conveyed in severalty to the defendant Bernheimer after these instruments had been executed, declaring the title as it was vested to be in trust for the benefit of these different individuals and Mayor Arnold. The defendant has, from time to time, sold portions of the land and received the proceeds thereof, both in money and securities. Prior to the making of the agreement for the purchase, improvement, and sale of the property, Frederick Nirdlinger and Jacob Nirdlinger had been engaged in business; and, when the firm of Arnold, Nusbaum & Nirdlinger was formed, the stock of the preceding firm became a part of the property of this succeeding firm. And on the 17th of January, 1859, an arbitration took place by which the differences between Jacob and Frederick Nirdlinger were settled, and certain amounts were found to be due to Frederick from Jacob. After that, and on the same day, these two persons entered into the following agreement:

"Know all men by these presents, that we, the undersigned, Frederick and Jacob Nirdlinger, do hereby agree that all the interest which the said Jacob may hold in real estate, in Minnesota, is held by him for the equal benefit of each of the undersigned, subject to the conditions and provisions of any agreement which said Jacob may have made or shall hereafter make with others as joint owners, and all payments and assessments made and to be made shall be equally borne by us individually, share and share alike. In witness whereof we have hereunto set our hands and seals this 17th day of January, A. D. 1859.                                              "F. NIRDLINGER.
                                                          "J. NIRDLINGER.

"Witnesses present:
    "JACOB WILE.
    "ANDREW J. MILLER."

This instrument was not under seal, but, in all other respects, precisely as it now appears. Frederick Nirdlinger died on or about the 4th of August, 1873, leaving the plaintiff Hannah Nirdlinger, his widow, and other plaintiffs, his children and heirs at law. And they, on the 22d of November, 1882, brought this action for an accounting concerning this property, the sales thereof made, and the moneys and securities realized by the defendant Bernheimer and the conveyance to them of so much of the unsold real estate as they should be entitled to receive. Both the defendant Bernheimer and Jacob Nirdlinger interposed answers, putting in issue the right of the plaintiffs to maintain the action; but, upon the trial before the referee, they were considered to be entitled to an accounting, and a judgment to that effect was directed by his report. In the decision made by him the rights of Jacob Nirdlinger, as well as those of the defendant Bernheimer have been carefully guarded and protected, and the plaintiffs have been held to be entitled to no more than one-half the interest of Jacob Nirdlinger, after the payment made to him of one-half the amounts which he has advanced. Jacob Nirdlinger died during the pendency of the action, and no appeal has been taken in his behalf, or that of the parties succeeding to his interest. But the defendant Bernheimer has not only appealed from the judgment, but, in addition to that, served a notice of motion for a new trial, on the exceptions taken to the report of the referee, and the judgment directing an accounting entered thereupon.

No objection has been taken to the legal validity of the instrument executed by Frederick and Jacob Nirdlinger, neither does it appear to be liable to any

substantial objection as an agreement between these parties; for it was proved upon the trial by the Revised Statutes of the state of Minnesota that the legislature there had provided and enacted on the subject of the conveyance and creation of interests in lands that (section 6) "no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing." And this was qualified by another section, brought to the attention of the court on the argument, declaring that (section 30) "the term 'conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing by which any estate, or interest in real estate, is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands." Rev. St. Minn. 1866, pp. 334, 335, §§ 10, 22, are in all respects similar to the provisions relating to the same subject, and now contained in the Revised Statutes of this state, (3 Rev. St., 6th Ed., p. 141, §§ 6, 7;) and under the provisions, an instrument of the nature of that executed between these two persons has been held to be valid and legally operative, (*Cook* v. *Barr*, 44 N. Y. 156,) and the same effect has been given to such instruments in the state of Minnesota, (*Randall* v. *Constans*, 33 Minn. 329, 333, 334, 23 N. W. Rep. 530.) But it was proven upon the trial that neither of these persons had contributed anything towards the expenses of caring for the lands after the time when this agreement had been entered into; and it was also proved that, in 1878, Jacob Nirdlinger became bankrupt, and that schedules were filed by him, in bankruptcy, containing no statement of any interest whatever claimed by him in the Minnesota lands, or their proceeds; and that omission was explained by him upon the trial to have risen out of the fact that he did not regard his interest in the lands as of any value. But neither this omission nor the opinion expressed by him concerning the lands had the effect of divesting him of the interest he was entitled to claim in this property; for his share as a matter of fact, subject to his obligation to maintain his contributions towards the expenses, had become vested in him under the acquisition of the title, and the agreements executed by the associates, declaratory of the trusts for which the property was held by the persons having the legal title; and, having become in that manner vested in him, it could not be divested by the expression of an opinion that his interest was valueless, or its omission from his schedules in bankruptcy. This principle was considered in *Clarke* v. *Hart*, 6 H. L. Cas. 633, where it was stated to be the law that, where there is a vested right or interest in property, the party in whom it is vested cannot waive or abandon it except by acts equivalent to an agreement, or it may be added amounting to an estoppel. Id. 656. And such is the language of the statute affecting this case. The cases, however, of *McLure* v. *Ripley*, 2 Macn. & G. 274; *Prendergast* v. *Turton*, 1 Young & C. Ch. 98, 13 Law J. Ch. 268, and other authorities, have been relied upon by the counsel presenting the appeal as sustaining the position that Jacob Nirdlinger lost his interest in this property by an abandonment of it. And these cases hold, in reference to mining enterprises, and other hazardous adventures, where one of the associates refused to contribute his share of the expenses, or to pay assessments regularly made against his share to meet the necessary expenses of the adventure, that he could not afterwards maintain an action to establish his right to participate in the profits, when, through the exertions of the other parties, it proved to be successful. But the present is not a case of this description, for the reason that the evidence has not established the fact that

Jacob Nirdlinger at any time made default in meeting payments required from him to maintain the necessary expenses of keeping or improving these lands. Upon no occasion does it appear by the proof that he was required to make any further or additional contributions beyond those which had been obtained from him. But, at all times, he was regarded by the defendant Bernheimer as a person who continued to be interested in this property. This is apparent from the testimony of Mr. Bernheimer himself, and also from the statement added to his answer, that he once every year made and rendered an account to Jacob Nirdlinger, and the other two members of his firm, of the receipts and disbursements touching the matters alleged in the complaint. And that Jacob Nirdlinger himself did not accept this theory of abandonment is entirely clear from the conversations related to have taken place with him by the witnesses whose evidence was given on behalf of the plaintiffs upon the trial; and also by the letters which Jacob Nirdlinger himself wrote to the defendant Bernheimer in November, 1882. As a matter of fact, therefore, there is an essential difference in the circumstances of this case from those which have been relied upon as sustaining this principle of abandonment. The principle itself appears to be well founded, but it has no application to the facts of this case, inasmuch as no intention to abandon his interest has been legally manifested at any time by Jacob Nirdlinger, and he has not been put in default by any neglect or refusal to bear his share of necessary expenditures for the preservation of this property. That has been shown by the defendant Bernheimer himself, who charged upon his books, as a part of the accounts relating to the management of this property, the expenses he had paid; and, for those contributions, to the extent to which they may be chargeable against either of the other parties, he is entitled to be indemnified upon the accounting which has been directed. And both the decision of the referee, and the judgment entered upon it, have provided him with this measure of protection.

Proof was also given upon the trial by the witness Jacob Wile that Frederick Nirdlinger had stated to him that he was glad he never had invested any money in this enterprise, and that he never would, for he considered it a money-losing investment. And his testimony further is to the effect that he drew a will for him at one time intended to make a disposition of his property, but which contained no reference whatever to any interest in the Minnesota land. But the person to whom this statement was made was neither interested in the land nor did he represent either of the persons who were so interested. And it does not appear that this statement was communicated, with the intention that it should be acted upon in any respect, to either of the other persons interested in this enterprise. For that reason, under the principle which has already been mentioned, what Frederick had said in this manner did not divest him of the benefit intended to be secured to him by the agreement made between himself and Jacob Nirdlinger, on the 17th of January, 1859. The intention of that agreement was to give to Frederick an equal benefit with Jacob in his share in this land, and that benefit was designed at once to become vested. And, from the time when the agreement was made, the share of Jacob was afterwards held for the equal benefit of himself and of his brother Frederick. It is true that this was subject to all payments and assessments made and to be made on account of this share, but at no time was Frederick required to make any payments, or to reimburse those which had been made by Jacob himself. He was, on the contrary, at the time of his decease, a creditor to a very considerable amount of his brother Jacob. There was, therefore, no default on his part upon which a forfeiture of his interest in this share could legally be placed, but it remained vested in him, as the interest had been created, subject to the obligation of defraying one-half of the payments and expenses made by Jacob, or for which he should become liable on account of the share, and this was the position and relation

of Frederick to the property at the time of his decease. The agreement in this respect materially differed from that upon which the cases of *Burnett* v. *Snyder*, 76 N. Y. 344, 81 N. Y. 550, were decided, for there the agreement made with Snyder was that he should receive one-third of the property earned and received by the two persons entering into the agreement with him, and should sustain one-third of their losses, as partners in a business with other persons, while in the present case the agreement vested Frederick Nirdlinger with an immediate interest in the share of Jacob Nirdlinger in this adventure. The statement was that he would hold the interest he had in the real estate in Minnesota, for the equal benefit of himself and Frederick, which secured to Frederick a direct interest, as the beneficial holder at least of one-half of the share to which Jacob was entitled. The agreement was for more than the contract upon which these two cases have been decided, for it was not an agreement on the part of Jacob to pay over to Frederick one-half of the amount he might receive, but an agreement that he would hold his share for the equal benefit of himself and Frederick; and, as that benefit could be no otherwise secured, when the rights devolved upon the plaintiffs in this action by the decease of Frederick, it authorized them to maintain this action for an accounting to ascertain the extent, and recover the amount, of this one-half interest in the share of Jacob. It is not necessary to determine whether the relation existing between these associates were those of partners or precisely what may be their legal character, for it is sufficient for all the purposes of the case that by the instruments which were executed the land which was purchased, improved, and held was for the benefit of each of the associates, in proportion to the contributions made and to be made by them towards its purchase, improvement, and preservation. When Frederick Nirdlinger died, the right devolved upon his widow and heirs and his next of kin, whom, as administratrix, she represents, to have a settlement and adjustment of this business. His estate had become legally subject to distribution and division, and that end could be secured in no other manner than by a settlement of the accounts relating to this land, and the action, therefore, is entitled to be maintained to obtain this result. It has been objected that laches were chargeable against the plaintiffs, forfeiting their right to maintain the action; but as the share of Jacob Nirdlinger in the property was at no time forfeited or divested, and Frederick Nirdlinger was not placed in default under the agreement made with him, but the land has been managed, controlled, and, in part, disposed of, under the relations which have already been mentioned, there seem to be no facts upon which such delay can be attributed to the plaintiffs as should, on that account, lead to a dismissal of their action. Ordinarily, as a principle of equity, parties have been required to observe diligence in the presentment of their actions to obtain equitable relief. The rules which have been followed have not been uniform, by any means, but have been somewhat arbitrary, to say the least; and it may be doubted whether it was not the design of section 414 of the Code of Civil Procedure to terminate the exercise of this discretion, and to subject all actions to the positive limitations now prescribed by statute, for it has there been provided that the provisions of the chapter apply and constitute the only rules of limitations applicable to a civil action, or special proceeding, subject to exceptions afterwards mentioned having no relation whatever to this precedent practice. It is not, however, necessary to decide whether this section is to be attended with this effect, for the case presents no such laches as, under the rules administered by a court of equity, would lead to its failure. *Brown* v. *County*, 95 U. S. 157. It was not necessary that the agreement made between these two brothers should be communicated to either one of the other associates to render it effectual. It operated substantially as a declaration in trust, under which Jacob afterwards held his share for the joint benefit of himself and Frederick, and that vested the latter with

such an interest as enabled the plaintiffs, after his decease, to maintain this action for an accounting, and the settlement of his estate. The principles referred to in *King* v. *Leighton*, 100 N. Y. 386, 3 N. E. Rep. 594, sufficiently support this right; and that was considered to be the law by this general term when the complaint was brought before it upon the demurrer. While the case has been very ably and ingeniously presented in support of the appeal, the facts are such as to render the authorities relied upon inapplicable, and the judgment, as it appears to be right, should be affirmed, and the motion for a new trial denied, with costs.

VAN BRUNT, P. J. I cannot concur in the conclusion reached by Mr. Justice DANIELS. I think that the evidence shows a complete abandonment of the enterprise by the Nirdlingers, and, after all these years, equity will not now allow his representatives to claim an accounting simply because the enterprise has at last turned out to be profitable.

BRADY, J., concurs.