H. L. HENRY, Appellant, v. WILLIAM EVANS AND J. F. EVANS.

**Partnership.** One partner may share his interest in a partnership
1   with a third person so as to make a partnership between these two, though the other members of the firm have no knowledge of such arrangement.

**Evidence** sustains finding as to when a partnership terminated and
2   the accounting stated, below.

DEEMER, J., took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

FRIDAY, MAY 31, 1895.

Action in equity for the dissolution of a partnership and for an accounting.—*Affirmed*.

*N. M. Hubbard* and *Wright & Baldwin* for appellant.

*Smith McPherson* and *N. M. Pusey* for appellees.

Kinne, J.—I. It is alleged in the petition that in 1877 a corporation known as the Evans-Jackson Live-Stock Company was organized under the laws of the state of Iowa. The purpose of the corporation was to

purchase and own a cattle ranch and cattle in the territory of Wyoming. The capital stock of the company was one hundred thousand dollars, in shares of one hundred dollars each. The original corporators were William Evans, J. F. Evans, James A. Jackson, Samuel Hass, and John T. Stewart. By the articles of incorporation, it was provided that sixty per cent. of the shares should be paid at once, which was done. August 25, 1877, J. F. Evans and William Evans requested plaintiff to take stock in said company, and on that day plaintiff paid to said Evans five thousand dollars in full for eighty-three shares of the company's stock, being sixty per cent. of its cash value. The stock had previously been issued to the incorporators heretofore mentioned, and plaintiff received certificates for stock which had been issued to J. F. Evans, and by him assigned on the back thereof September 12, 1879. With the capital stock paid in, said company purchased, in the territory of Wyoming, herds of cattle, and carried on the business of raising cattle until 1881. During said time J. F. Evans was the president of said company, and William Evans was its treasurer and manager. During said period two dividends were made, one on December 17, 1879, for eight thousand eight hundred and twenty-three dollars and thirteen cents, and another for four thousand dollars. That the share of said dividends due plaintiff was one thousand one hundred and two dollars and seventy-nine cents. At this time William Evans held three hundred and seventy shares of stock; J. F. Evans, two hundred and eleven shares; Samuel Hass, two hundred and forty-nine shares; John T. Stewart, eighty-four shares; and plaintiff, eighty-six shares. That the dividends due plaintiff were paid to J. F. Evans, as plaintiff's stock still stood in the name of said Evans, nor was plaintiff's stock ever transferred to him on the books of the corporation. That the stock of plaintiff

was thus held at the instance of the Evanses, who did not desire that Stewart or Hass should know that plaintiff held stock. February 26, 1880, the corporation, or its stockholders, sold two-thirds of the capital stock to one Mead for ninety-nine thousand nine hundred dollars, to be paid as follows: Five thousand dollars down, forty-nine thousand nine hundred and fifty dollars May 8, 1880, and forty-four thousand nine hundred and fifty dollars June 8, 1880. In pursuance of said sale, and at the request of the Evanses, plaintiff deposited with William Evans, treasurer, fifty-seven shares of his stock. Said sale was consummated, and the money paid as agreed, the money for plaintiff's fifty-seven shares being paid to J. F. and William Evans. After this sale, a new partnership was formed, composed of: William Evans, to put in thirty thousand dollars of capital; Samuel Hass, to put in twenty thousand dollars of capital; J. F. and T. J. Evans, to put in twenty thousand dollars; and John T. Stewart, to put in five thousand dollars,—for the purpose of purchasing cattle in Oregon, and establishing a new ranch for ranching cattle at North Park, Colorado. Plaintiff agreed that the money paid for his fifty-seven shares should go into this new partnership, and that all moneys due plaintiff on dividends or for sale of his other stock should be invested in said partnership. March 1, 1880, in pursuance of the formation of said partnership, and of the agreement made between plaintiff and Evans, Hass and William Evans purchased in Oregon large numbers of cattle, of the value of seventy-eight thousand dollars. These cattle were driven to North Park, Colorado. Said partnership has continued ever since its organization. In June, 1881, plaintiff's remaining one-third of his stock in the corporation was sold to Mead, and the money paid therefor to Evans, and the same was used in the new partnership. That the total sum due plaintiff on dividends, as

reported by Evans, was thirteen thousand one hundred and thirty-two dollars and seventy-nine cents, all of which was invested in the new partnership. It is averred that, since the partnership of Evans, Hass & Co. was formed, Samuel Hass has purchased Stewart's interest. William Evans and Hass have purchased T. J. Evans' interest, and said firm is now composed of J. F. Evans, William Evans, Samuel Hass, and this plaintiff's interest in the share of J. F. Evans and William Evans; and each is interested in the present ranch and herd at North Park, in proportion to the amount of money each paid in to make up the capital stock of said partnership,—seventy-eight thousand dollars. Plaintiff asks to be declared a partner with J. F. and William Evans' interest in said copartnership to the extent of the amount in fact due him from the proceeds of the Evans-Jackson Live-Stock Company. The firm of Evans, Hass & Co. has been and still is engaged in raising, shipping, and selling cattle from their ranch at North Park. It is averred that from time to time the Evanses have verbally reported as to the business to plaintiff. That the present value of the herd is eighty thousand dollars. That defendants refuse to make plaintiff a statement of the condition of the business of said partnership. That no sum other than the original capital has been put into said partnership save the profits of the business. That, when the partnership was formed, none of its members except J. F. Evans and William Evans knew that plaintiff was interested therein. That said defendants have received and kept the proceeds of plaintiff's stock, and put the same in as capital in the partnership. That they refuse to pay plaintiff any of the proceeds of his interest in said partnership, and deny his interest in said firm. The prayer is for an accounting of the business of the live-stock company and of the co-partnership; that plaintiff's interest therein be established,

the firm dissolved, and its assets equitably distributed among the partners, according to their respective interests. Defendants answered, denying that they requested plaintiff to take stock in the live-stock company, and that he paid five thousand dollars for his share of stock. Admit that plaintiff did purchase of J. F. Evans eighty-three shares of stock in said company for five thousand dollars, and paid for them, and that the certificates for said shares were assigned by J. F. Evans to plaintiff; that plaintiff afterwards purchased three shares of said stock of defendant William Evans. Deny that J. F. Evans was, during the whole existence of the corporation, its president. Admit the receipt of dividends of one thousand one hundred and two dollars and seventy-nine cents, which J. F. Evans has offered to pay plaintiff, and is now ready to pay him. Admit the sale of stock to Mead, and aver that defendant J. F. Evans, on receipt of the purchase price of plaintiff's stock, offered to pay it to him, and he refused to receive it; that said Evans is now ready to pay the same. Admit the formation of the new partnership; that it purchased cattle, and took some of them to North Park. Admit the sale of the remaining one-third of the stock of the live-stock company, including that of plaintiff, to Mead; that J. F. Evans received the money for plaintiff, and offered the same to him, which he refused; that he is now ready to pay the same; that he holds same as the custodian of plaintiff. They deny that plaintiff had any interest in the copartnership. In April, 1889, plaintiff filed a supplemental petition, charging that in March, 1885, the copartnership of Evans, Hass & Co. was dissolved by mutual consent, and a settlement had, which settlement plaintiff adopts, and claims his share thereof. He charges that, of the seventy-five thousand dollars subscribed capital stock, there was used sixty thousand dollars; that, after deducting taxes and expenses, there

remained to be divided among the partners the sum of seventy-eight thousand four hundred and seventy-four dollars; that the entire assets were sold to Hass for two hundred thousand dollars in cash, making the total value of the assets two hundred and seventy-eight thousand four hundred and seventy-four dollars. Plaintiff avers that there is due him from the assets of the live-stock company thirteen thousand four hundred and eight dollars; that he is entitled to participate in the assets of Evans, Hass & Co. For answer to this supplemental bill, defendants say they admit that seventy-five thousand dollars capital was subscribed to the partnership, that the venture was unprofitable, and no profits have ever been realized from the same. They aver that, after the Oregon venture, William Evans and Samuel Hass, on their own account, purchased the North Park cattle ranch, and thereafter they entered into an agreement with the defendant J. F. Evans, by which he became jointly interested with them in the Mendenhall purchase, which was not connected with the partnership entered into in March, 1880, nor a continuation of it. That, under said last partnership, they purchased cattle, and continued in the business until March, 1885, when they sold the assets of the partnership to Hass for two hundred thousand dollars. That plaintiff never had any interest in the purchase of the North Park cattle, nor in any of the subsequent cattle deals and transactions. That he had no interest in the first partnership. That the money received under the live-stock company belonging to plaintiff was not received for the purpose or with the understanding that it should be placed in the funds of the copartnership formed in March, 1880, for the purpose of driving cattle from Oregon.

The case was tried to the court, and on December 31, 1889, he filed findings of fact and law. In substance, the court found that plaintiff was a partner in

what was known as the "Oregon Venture;" that he was also a partner with defendants to the amount of dividends and amount realized from the sale of the two-thirds of his interest in the Evans-Jackson Live-Stock Company, then in J. F. Evans' hands, in the sum of nine thousand six hundred and fifty-two dollars and seventy-nine cents in money; that his interest is in the proportion which said sum bears to the actual amount of money contributed by defendants, William and J. F. Evans, to the capital stock of said copartnership, and plaintiff's liability, if any, for losses of the copartnership, is in the same proportion; that plaintiff had no interest in the Mendenhall ranch. Whereupon the court ordered that an accounting be had, and referred the case to L. W. Ross, Esq., as a referee to state the account, and authorized said referee to use the evidence already offered, and provided that either party might take further evidence before said referee. Thereafter the hearing was had before the referee. Evidence was introduced, and said referee made findings of fact and law. These findings are very lengthy, and cannot be fully set out. The referee found that there was a loss of two thousand nine hundred and sixteen dollars and eighty-one cents in the Oregon venture, of which plaintiff should bear four hundred and sixty-nine dollars and twenty-five cents. He stated the account thus:

Defendants Dr. to plaintiff as
  per decree ................$ 9,652.79
Sale last one-third stock ......    3,470.75
Interest on same 9 5-12 years...    1,961.00

                       $15,084.54

Proportions of loss sustained..        $    469.25
Check ...... .................        4,000.00
Balance ....................         10,615.20
                                             $15,084.54

—And recommended that judgment be entered for ten thousand six hundred and fifteen dollars and twenty cents for plaintiff, and that the costs be equitably apportioned.    Plaintiff's motion to set aside the referee's report, and exceptions and objections thereto, and his motion to set aside the interlocutory order and decree, were overruled, and defendant's motion to confirm the report was sustained.    Judgment was ordered accordingly, from which this appeal is prosecuted.

II.    The record and arguments in this case contain nearly nine hundred  pages of printed matter. The questions presented are mostly of fact.    We have often said in such cases that we cannot review and discuss the evidence in detail.    To do so in this case would fill a volume, and would serve no useful purpose to anyone save the parties to this litigation.    The case presents in reality but three questions which we need to consider.    *First.*  Was plaintiff a partner with the Evanses in what was called the "Oregon Venture?"    *Second.*   If so, when did said partnership cease to exist?    *Third.*   Was the finding of the referee as to the profits or losses of the Oregon venture correct?    We think the evidence very satisfactorily shows that about March 10, 1880, the defendants, William Evans, J. F. Evans, also T. J. Evans, Samuel Hass, and John T. Stewart, entered into a copartnership, in the language of their written agreement, "for the summer of 1880, for the purpose of purchasing and driving cattle from Western states and territories to the Eastern market, for sale and for ranch."    That the several parties furnished the following sums of money for said enterprise:    William Evans, thirty thousand dollars; J. F. Evans and T. J. Evans, twenty thousand dollars; Samuel Hass, twenty thousand dollars; and J. T. Stewart, five thousand dollars.    That, in pursuance of this contract of partnership, William Evans and Samuel Hass were to and did go west to make the purchases of

cattle. That the partnership was carried on at least until 1881. This agreement of partnership was in writing, and plaintiff's name did not appear therein or thereto. Plaintiff does not now claim that he was a member of the copartnership, except as to the interest of the partners William and J. F. Evans therein. His claim is that to the extent of the amount of the dividends and amount realized from the sale of his interest in the Evans-Jackson Live-Stock Company, which had been received by William Evans, and formed a part of the capital stock paid in by him and J. F. Evans on the copartnership above mentioned, he was a partner. The court below so found, and held that, by reason of the transaction between plaintiff and William and J. F. Evans, said defendants were estopped from denying that plaintiff was a partner with them in the Oregon enterprise. In this we think there was no error. It is true that certain members of the firm of Evans, Hass & Co. do not seem to have been aware of the relation which the plaintiff bore to the two Evanses, but we do not deem that material in this case, as it is not sought to make plaintiff a partner as to them, or in any way affect their interests. We know of no reason which prevents some of the members of a firm from admitting a third party to share in the firm profits and losses, thereby making him a partner as between themselves. This is what was in fact done in this case. While plaintiff, in order to have become a member of the firm of Evans, Hass & Co., must have had the assent of all of the members of that firm, no such necessity existed when he simply became a partner with these two Evanses as to their interest in said firm. We think, as to these two defendants, plaintiff must be treated as a partner to the extent of his interest, heretofore stated, in the capital contributed in their name to the firm.

III.   On the one hand, it is contended that, if this partnership existed, as we have found it did, it ceased in 1880 or 1881, prior to the purchase of what is known as the "Mendenhall Herd;" and, on the other hand, it is said, if it existed at all, it continued until 1885, and embraced transactions of said defendants down to that date.   The court below found that the partnership did not embrace the Mendenhall purchase or any subsequent transaction.   We think this finding was correct.   By the terms of the contract entered into by the members of Evans, Hass & Co., the business was limited to the summer of 1880.   It is not to be denied that this fact is not absolutely controlling in determining the time in fact during which said partnership existed.   That is to say, persons may fix a limit to the time a partnership is to exist, yet they may by common consent continue the business for which the copartnership was formed beyond such limited time, and the partnership be thus extended; but it cannot be doubted that the limit fixed in the written agreement is a matter which should have much weight in determin ing as to whether, in fact, there was any extension of the time of the duration of the copartnership.   Now it appears that, after they had sold all of the cattle they could, the firm concluded to rent ranching privileges from one Mendenhall in order to keep such cattle as were unfit for sale.   For these and other reasons it seems clear that the firm continued to exist until 1881, so that the property on hand, and that purchased and not yet delivered them, might be disposed of.   Again, it appears that, after the Oregon venture had been so far prosecuted that all the cattle desired had been bought, the money which had been subscribed for the prosecution of the enterprise in 1880, and which had not been used, was returned to the several subscribers.   This would hardly have been done had the firm had in contemplation a further continuance of the business,

where large amounts of money must be expended. We
think, also, it appears that the members of the firm
had considered that the Oregon enterprise was at an
end prior to the purchase of the Mendenhall herd,
except as to closing out its business. It is clear that
the only parties interested in the Mendenhall purchase
were William Evans and Samuel Hass. Some time
thereafter, F. J. Evans bought an interest in that herd.
We cannot review the evidence from which we arrive
at our conclusion, but it fully justifies the finding
below as to the fact that plaintiff had no interest in the
Mendenhall purchase, or in any subsequent trans-
actions of the Evanses.

IV. After determining the foregoing matters,
the trial court referred the case to a referee for an
accounting between plaintiff and William and J. F.
Evans as to the partnership matters, and in such
accounting the referee was to consider the evidence
already adduced, and also such other evidence as the
parties might produce. An extended hearing was had,
and much new evidence taken. The referee in his
report makes an itemized statement of the debit and
credit items of the Oregon venture, and finds that it
resulted in a loss of two thousand nine hundred and
sixteen dollars and eighty-one cents, and that plaint-
iff's proportion of said loss was four hundred and sixty-
nine dollars and twenty-five cents, which he charges to
him. We have heretofore given the final statement
between the parties as found by the referee, showing
that these defendants still owe the plaintiff ten thou-
sand six hundred and fifteen dollars and twenty-nine
cents. For this amount and interest judgment was
entered against the defendants, and the costs were
equally divided between plaintiff and defendants. It
is contended by appellant that the accounting as made
by the referee is incorrect, that the losses of cattle in
the Oregon venture were much overestimated, and that

in other respects the accounting is incorrect. Appellant admits that it is a very difficult matter to arrive at the real facts. This difficulty is shown when we find one witness estimating a profit of over ninety thousand dollars on the Oregon venture, and another testifying that it entailed a loss in the sum found by the referee. It would be exceedingly difficult, if not impossible, from this testimony, to tell with any degree of accuracy what the facts really were. The judgment of the lower court is sustained by the evidence. We have given as much of our time as we could to the consideration of this case. It is of that character, and the testimony is such, that no result we might reach would be abidingly satisfactory as to the exact sum due plaintiff. We conclude, however, that there exists no sufficient reason for disturbing the judgment entered in the district court, and it will be *affirmed.*

Deemer, J., took no part.