## REPLOGLE et al. v. NEFF.

No. 24294.   Jan. 14, 1936.

Rehearing Denied March 17, 1936.

A. M. Beets, for plaintiffs in error.

J. C. Stone and William Neff, for defendant in error.

PER CURIAM. This is an equity proceeding commenced in the superior court of Okmulgee county on February 16, 1931. by Charles R. King against V. W. Miracle, D. Replogle, Carter Oil Company, Indian Territory Illuminating Oil Company, S. W. Brown, Jr., and L. E. Neff.

Plaintiff alleged the existence of a partnership between him and Miracle, and alleged that some of the partnership property had been conveyed to defendants Replogle and Neff. Plaintiff prayed for a declaration of the partnership, an accounting, and a dissolution. The action was brought in Okmulgee county, where service was had upon Miracle and Brown. Replogle was served with summons in Oklahoma county. Defendant Neff residing in Oklahoma county. Some of the alleged assets of the alleged partnership consisted of oil and gas royalty interests and land located in Seminole county.

Without waiting to be served with summons, Neff filed an answer in the case and a cross-petition against Miracle and Replogle, and the plaintiff and all other defendants, saying that he, Neff, had a joint adventure arrangement with Miracle in regard to acquiring some of this royalty interest in Seminole county, by which. for his services and expenditures in that connection, he was to have certain fractional interest therein; that although Miracle may have acquired this royalty for the benefit of the partnership, or joint adventure. which Miracle had with plaintiff King, the members of the main partnership would have to recognize his, Neff's, interest in this property, and Neff prayed for a finding and declaration as to the existence of a partnership or joint adventure between him and Miracle and an accounting with reference to that part of the property involved in their subpartnership.

On March 2, 1932, plaintiff dismissed his petition with prejudice: thereupon, Miracle and Replogle asked the court to dismiss Neff's cross-petition, alleging that it was not germane to the original petition filed by plaintiff King. and that King's petition having been dismissed, there was no case pending in which the cross-petition could be maintained. This motion was overruled. Replogle then pleaded to the cross-petition of Neff, setting up the same matters which he and Miracle had set up in their motion, and also raising the point that Neff sought by his cross-petition to have the rights of the parties adjudicated in, and with reference to, real estate located outside of Okmulgee county.

which real estate he said had already been deeded to him by Miracle; that the court was, for this additional reason, without jurisdiction to entertain Neff's cross-petition. In this plea, he denied that he or Miracle owed Neff anything and asked for **affirmative relief** against the cross-petitioner, that is, that he "have judgment against the cross-petitioner quieting title against the said defendant and cross-petitioner to all of the interests inherited by Wiley Taylor, and others, in and to the allotment above described, and for such other and further relief as may be just and equitable in the premises."

The issues being thus joined, the matter was tried to the court, without a jury, and resulted in judgment in favor of Neff, determining and declaring his interest in the subpartnership or subjoint adventure, and ordering paid to him certain moneys which had originated from his interest, part of which was still held by the oil company defendants, and a part of which had improperly passed from the hands of defendant Miracle to the possession of defendant Replogle. The judgment was for Neff to recover this sum, $1,774.48, with interest, from Replogle, and adjudging that Miracle and Replogle should pay the costs. From this judgment Miracle and Replogle appealed, their appeal being lodged in this court on December 2, 1932. They superseded the judgment by supersedeas bond, appearing in the record at page 206, and defendant in error asks that, in the event of affirmance. judgment be rendered against the sureties on that supersedeas bond.

In seeking to have this judgment of the trial court reversed, plaintiffs in error, Replogle and Miracle, do not utter one word against the righteousness and correctness of the judgment as rendered, do not question the sufficiency of the evidence to support the judgment, and we do not see how they could plausibly question the sufficiency of the evidence or the correctness of the judgment as rendered. for the record fully supports the judgment, and, in our opinion, does full justice and equity between the parties. They contend simply that the superior court of Okmulgee county was without jurisdiction to hear and determine the issues involved; contending that the court was without jurisdiction because plaintiff dismissed his original petition in the case; because Neff sought to litigate matters between him and defendant Miracle with reference to a smaller partnership, or joint enterprise, a kind of subpartnership with reference to property originally drawn into the case by plaintiff's petition; because the accounting sought by

Neff in his cross-petition had reference to oil and gas royalty rights in, or fruits from, land located in another county, and because the trial court rendered personal judgment against Replogle for a certain sum of the moneys found due to Neff in the accounting, which moneys had, in some way, passed into the hands of Replogle, which matters plaintiffs in error say were not germane to the original action filed by King.

In seeking to sustain the judgment of the trial court, the defendant in error contends that the cross-bill of Neff was germane to the original action, that the dismissal by plaintiff did not destroy the jurisdiction of the court to hear Neff's cross-complaint, that the judgment did not, in effect, determine interests in real estate in another county, but was limited to determining the interest of the parties in royalty moneys accrued from such real estate, and that Neff was entitled to personal judgment against Replogle on the theory of following a trust fund which had improperly passed from the original trustee to a third person.

We are of the opinion that the judgment of the trial court should be affirmed, that attacks thereon by plaintiffs in error are all without merit, and that the theories upon which the defendant in error seeks to support and sustain the judgment of the trial court are well founded. In sustaining the judgment of the trial court, however, we have found it advisable to explore some fie'ds of law and equity which were not mentioned by the court or counsel in the trial of this case and are not discussed or developed in the briefs of either party.

It is well settled that a partnership, or a joint adventure, may consist of individuals, or of individuals and another lesser partnership. or joint adventure,—a kind of subpartnership,—and that the agreements or articles need not be in writing. Houston et al. v. McCrory et al., 140 Okla. 21, 282 P. 149.

It is also well established that a bill in equity, filed by one member of an alleged partnership or joint adventure against other members thereof for a declaration of the partnership or joint adventure and for an accounting, is a transitory action, the venue of which is governed by section 117, C. O. S. 1931, and that it may be brought where one or more of the defendants may be served with summons, and summons may issue to other counties for service on other defendants. Myers v. Garland et al., 122 Okla. 71, 251 P. 34.

The case last above cited is also authority for the proposition that, if, in such an action, it is alleged that an estate in certain real property is a part of a partnership's assets, and such allegation is traversed, this forms an issue for trial by a court of equity, as an incident to the primary relief prayed for in the bill, and the rights of the parties in the real property may be determined, though the real property does not lie in the county where the court sits.

The matter of one main partnership having as one of its members another lesser partnership is already established herein. Kindred to this idea is what is known in the law books as a "subpartnership," or a "subpartner;" the essence of which is that A, B, and C may constitute the main partnership, having each one-third interest. C may make a private and secret arrangement with D to the effect that, for certain consideration, D is to have a certain fractional part of C's one-third interest in the main partnership. This constitutes a subpartnership. It constitutes D a subpartner to the original partnership. D may not be known to A and B. He is not directly or personally liable to the creditors of the main partnership, but his interest in the partnership assets is such as to permit him to maintain an action to have the court declare what his interest is in C's part of the partnership assets, and to have an accounting as to the amount due him and to have an order or judgment for such amount to be paid over to him, which accounting and which order and judgment may run against not only C, but against A and B also. This matter of subpartnership is treated in 47 Corpus Juris, pages 715 and 716, wherein it is stated:

"A contract of subpartnership is an agreement between a partner and a third person by which the latter is to share in the profits, or profits and losses, of the partner with whom the contract is made. The manner in which the profits are to be divided is immaterial. The subpartners are partners inter se. but, in the absence of the mutual assent of all the parties, a subpartner does not become a member of the partnership, even though the agreement is known to the other members of the firm. It is clear that not even a subpartnership exists where one loans money to a firm and acts as agent for it in consideration of receiving one-third of its gross profits; or where two persons by a written contract agree to carry on a particular business, and in the same instrument one of them and a third person agree to carry on a distinct business. Although there is authority to the contrary, it has been decided that a subpartner cannot be held liable for the debts of the partnership. The subpartner has none of the rights of a part-

ner in the business. He may be held liable for debts which may be regarded as debts of the subpartnership. Where the so-called subpartner owns all the property and profits, he is considered to be the real partner. **A subpartner may maintain an equitable action against the firm to determine his share in the portion due the partner with whom he contracted.** Such an action is subject to all defenses available against the contracting partner."

Under the above statement of text, two cases are cited supporting the rule as hereinbefore stated, to wit: Henry v. Evans, 95 Iowa, 244, 63 N. W. 687; Nirdlinger v. Bernheimer, 133 N. Y. 45, 30 N. E. 561.

In the case of Henry v. Evans et al., supra, plaintiff owned some corporate stock, which stood in the names of the defendants. The corporate stock was sold, with plaintiff's consent, and put into a partnership formed by defendants and some third persons. The third persons had no knowledge of plaintiff's interest. When defendants and the third persons failed to recognize plaintiff's interest and to account to him, plaintiff brought a suit in equity to have him declared a partner with the defendants, having an interest in their interests in the main partnership, for an accounting and dissolution of partnership, that is, to have himself declared a subpartner. His action was entertained by the trial court, a subpartnership declared, an accounting had, and judgment rendered in plaintiff's favor of $10,615.20, which judgment was affirmed by the Supreme Court of Iowa.

In the case of Nirdlinger v. Bernheimer et al., supra, the one syllabus of the case fairly and succinctly states the facts and the law, and reads as follows:

"In 1855 several parties entered into a joint venture for the purchase and improvement of land, and took the legal title in the name of B., one of the associates, in trust for all. In 1859, J., one of the associates, stipulated in writing with his brother, E., that the latter should have one-half of his interest in the property on certain conditions. This agreement was not known to the copartners of J. In 1873 F. died, and nine years later his representatives brought this action to establish the right of their intestate as subpartner of J. None of the defendants answered, except B. and J. The pleadings admitted the existence of the joint enterprise, the trust relation of B., the share of J., and that his interest was still outstanding. There was a judgment for plaintiffs, from which B. alone appealed. Held that, B. having admitted J.'s right, he could not take advantage of any failure on E.'s part to comply with the conditions on which the latter acquired an interest in J.'s share of the co-partnership estate." 58 Hun, 603, 11 N. Y. Supp. 609, reversed.

In the body of the opinion it is further declared:

"The right of a subpartner to maintain an equitable action of this character upon the facts disclosed in this case cannot be successfully questioned. As between themselves, the brothers were partners, and the subject of the partnership is the interest which one of them had in the Minnesota enterprise, and the extent of which must be determined in order to adjust the equities between them."

And, further:

"Here the plaintiffs have a vested interest in the corpus of the enterprise, and the relation of subpartners has been terminated by the death of the parties to it, and the time has arrived when equity requires that the status of all the parties having a right to share in the partnership investments shall be ascertained."

It will be observed that, in this case, the accounting was precipitated by the personal representatives of the deceased subpartner, in which action he made defendants not only J., from whom he took his subpartnership interest, but also J.'s partners. These partners of J. having complained that they should not be thus sued by a subpartner who was unknown to them, the New York Court of Appeals declared in this connection:

"The defendants are to be placed in no other or worse position than if this action had been brought and prosecuted by Jacob Nirdlinger (J.), for the purpose of an accounting and a discovery of his interest in the common property."

It is clear, therefore, that in equity procedure situations have heretofore arisen very similar to the situation which arose in this case in the superior court of Okmulgee county, the only difference being that the subpartner in this case was brought into an accounting suit started by one of the main partners, and, having been brought in, he set up his contentions that he was a subpartner and was entitled to an accounting and a share of the corpus of the partnership assets, whereas, in the cases in other jurisdictions, the subpartner was plaintiff and started the equity proceedings seeking to accomplish the same result. It seems quite obvious to us that, if such a subpartner might institute and originate the proceedings, it is all the more logical that he should be permitted, when brought in as a party defendant into an accounting case initiated by one of the main partners, to set up by cross-complaint his contentions to the effect that

he is a subpartner and has an interest in part of the partnership assets.

It follows, therefore, that where one member of a partnership or joint adventure sues other alleged members thereof, it is competent for one of the defendants sued to assert by cross-petition against another defendant that the property held by such other defendant, and alleged by plaintiff to be a part of the assets of the main partnership, is really also assets of a smaller partnership or joint adventure, and to ask for a determination of his rights and an accounting as against his codefendant and other parties to the action, for this is a necessary incident to the main action started by plaintiff, and equity will give complete relief to avoid multiplicity of suits. For, in addition to the above authorities, we have the general principle in regard to affording complete relief as announced in 47 Corpus Juris, 1205, as follows:

"When equity has assumed jurisdiction of a partnership accounting, it will retain jurisdiction so as to afford complete relief between the partners or their representatives as to a'l controversies growing out of the partnership."

We do not think that the plaintiff, by dismissing his action, can rob the court of equity of jurisdiction to go ahead and afford complete relief between the partners, subpartners, or their representatives as to all controversies growing out of the partnership.

There remains but one other matter to be discussed and disposed of, and that is the contention of plaintiffs in error that Neff should not have had personal judgment against Replogle for that part of the partnership assets belonging to Neff which had improperly come to rest in the hands of Replogle. The power of a court of equity to follow a trust fund and to bring into the case any person into whose hands the trust fund is traced is too well established to need elaboration here. In this case the court did not have to go out and bring in an additional party. Replogle was already a party to the case. In this connection it is declared in 47 Corpus Juris, page 1199, as follows:

"Where plaintiff's copartners transferred a'l the partnership assets to a corporation, without his knowledge or consent, thus dissolving the partnership, plaintiff could sue his copartners in equity for an accounting, or, if the transfer was fraudulent, could follow the assets into the hands of the fraudulent transferee."

The record in this case thoroughly establishes the fact that Replogle knew from the inception about Neff rendering services and incurring expenses to aid Miracle in getting this royalty interest in Seminole county, and knew that Neff was entitled to an interest for such services and expenses, and when Replogle took possession of some of the money which rightfully belonged to Neff, and undertook to hold it, he was acting in fraud of Neff's rights, and the transfer of such funds to him was fraudulent, which places him clearly within the ruling last above stated from Corpus Juris.

It follows, therefore, that the judgment of the trial court should be, and the same is, hereby affirmed. It is further ordered that defendant in error, L. E. Neff, have judgment in this court against the sureties on the supersedeas bond, which appears in the record at pages 206 and 207, and counsel for defendant in error is charged with the duty of preparing and submitting to this court proper journal entry for such judgment on such supersedeas bond.

The Supreme Court acknowledges the aid of Attorneys C. C. McCollum, J. B. Sowder, and Prentiss E. Rowe in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McCollum and concurred in by Mr. Sowder and Mr. Rowe, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur.