## WABASH, ST. L. & P. RY. Co. *v.* CENTRAL TRUST Co.[1]

*(Circuit Court, E. D. Missouri.* November 17, 1884.)

RECEIVERS—APPOINTMENT IN FORECLOSURE PROCEEDINGS.

Where an insolvent railroad company, having both general and underlying mortgages upon its roads, instituted equitable proceedings to have its roads sold, and obtained the appointment of general receivers for the benefit of all concerned, and one of the defendants, a trustee under one of said general mortgages, thereafter filed a cross-bill to have said mortgage foreclosed, and asked for the appointment of additional receivers, *held*, that such additional receivers should not be appointed unless their appointment could be shown to be necessary for the protection of the interests of the parties interested under said mortgage.

In Equity. Application for the appointment of additional receivers under a cross-bill.

The Wabash, St. Louis & Pacific Railway Company is a corporation organized under the laws of Missouri. It was created a body corporate by the consolidation of a number of other railroad companies organized and existing under the laws of the states of Missouri, Illinois, Indiana, and Ohio, and owns lines of railroad extending across the states of Missouri, Illinois, and Indiana, and into the states of Ohio, Michigan, and Iowa, with branches extending in various directions within said states. Companies which formed the consolida-

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

tion had, prior to the consolidation, given mortgages upon their respective roads. After the consolidation of the greater portion of the roads now forming said consolidation, the Wabash road executed to the Central Trust Company of New York and James Cheney, as trustees, a general mortgage covering all the lines it then owned to secure the payment of an issue of bonds. Thereafter said railroad company leased all the lines then in its possession to the St. Louis, Iron Mountain & Southern Railway Company, and afterwards executed a second mortgage to the Mercantile Trust Company of New York upon its rolling stock, and certain real property in Chicago and Detroit, and later executed a third mortgage, which covered all its lines of railway and other property. After executing the third mortgage said railroad company became insolvent, and unable to pay either the interest on its bonds or the principal of a large floating debt which it owed. In this state of affairs it came into this court and asked for the appointment of general receivers, and a sale of its property for the benefit of all concerned, alleging its insolvency, and that if said lines of road were broken up and the fragments thereof placed in the hands of various receivers, and the rolling stock, materials, and supplies seized and scattered abroad, the result would be irreparable injury and damage to all persons having any interest in said lines of road. General receivers having been appointed in accordance with the prayer of said company's bill, the Central Trust Company of New York and James Cheney, trustees under said general mortgage, filed their cross-bill asking that the mortgage to them be foreclosed and that additional receivers be appointed.

*H. D. Kent, Wager Swayne,* and *John F. Dillon,* for complainant.

*Butler, Stillman & Hubbard* and *Phillips & Stewart,* for complainant in cross-bill.

TREAT, J., (*orally.*) The circuit judge, when this matter was before him on the original bill, appointed Messrs. Humphreys and Tutt, receivers. As such receivers they were to protect not only the property itself, but the interests of all the parties connected with this estate. They are just as much the receivers of the parties to this cross-bill as they are the receivers of every other person in interest. True, the proceeding is peculiar in this aspect: that the application was made by the corporation itself, instead of being made by the mortgagee on default of payment of interest. As I have said heretofore, it does not follow as a matter of course, because there is a default in interest, that a mortgagee has a right to the appointment of a receiver. There must be other considerations. But it is apparent in the case now before the court that if this bill had not been filed before default in interest, and facts which appear of record here had appeared upon the application of the mortgagee, a receiver would have been appointed under the mortgage. This application, however, is before the court in this aspect: there are receivers who have been appointed by the circuit judge who are bound to care for the interests of all

concerned,—of this defendant who files his cross-bill, as well as every one else.

It appears from the proceedings, so far as they have progressed, that this enterprise is of that scope and extent that disintegration in this intermediate condition would be just as destructive to the interests of the party applicant now asking for separate receivers as to all other parties involved in the enterprise. To grant this application at this stage would be not only to destroy his interests, but the interest of all other, or many other, parties to this suit. What, then, shall the court do? If this party is to have separate receivers, of course, they could only be receivers to the extent of those interests in the property covered by his specific mortgage. The court knows from what has occurred in the case that the result would be to cut him off from terminal facilities at the most important points out of which income is to be derived. Hence, the receivers, if appointed under his bill, leaving the receivers already appointed by the circuit judge with the residue of the property, would require negotiations between them whereby the receivers under this cross-bill might have an opportunity to get into the large cities in the conduct of their business. Now, that certainly would be very disastrous to the applicant, and very ruinous to the property. I know no reason why, if the court grants this application, divisional mortgagees might not also have receivers appointed specifically for each of them; and I know no reason (to go a step further) why the lessors of property involved in this large scheme should not have separate receivers appointed for them. That would be the result.

The court must look to the interests of all concerned. This is a step which, if granted, would set a precedent in this case whereby the divisional mortgagees and the lessors, each for himself, might come in and have a separate receiver, and the whole railroad scheme involved would at once be disintegrated, to the destruction more or less of the interests of everybody. Now, concerning these matters, I think the circuit judge was wise in his appointments, and those appointments require the receivers who already exist to protect the interests of the party applicant here and all other applicants; but if the matter is to be disintegrated, and as many receivers appointed as there are separate interests, then nothing but injury can occur, and the ruin of the whole railroad scheme in its entirety. Sitting here, therefore, as a chancellor, I am bound to look to the interests of all concerned, to see that they are *all* cared for. They are to be cared far under the order already made. There may be, as suggested by Mr. Stewart, of counsel for the applicant, certain contingencies whereby further action must be had by this court. Suffice it that, if such contingencies occur, this court will take needed action therefor.

Judge DILLON was apprehensive, under what had occurred elsewhere, (concerning which I have no comments to make,) that it might be very important, under proper safeguards, that something should be

done on this application, and suggested the form of an order whereby that result could be effected. I see no such difficulty. I foresee none; but if it does occur, then this court will take the needed action. As the matters are now before the court, these receivers are bound to protect the interests of this applicant and of every one else. Disintegrating the property would be pernicious, even in the modified form in which this appointment is asked. It would cause a confusion of accounts, and such a confusion as would benefit no one, and would involve, I may say, pernicious consequences. Hence the result is, this, and such is the decision of the court: That, inasmuch as it does not appear to the court that there is any present necessity for the appointment of receivers under the cross-bill, as prayed for, the application will lie over for further consideration, to be determined when, in the further progress of the proceedings, it may appear to the court that its action is required in respect thereto.

*Mr. Stewart.* I understand the application is not denied, but just continued?

*The Court.* No; I simply postpone it as future action may require. You understand, of course, in regard to the matter, that I am not going to disturb the present order of things. I simply leave it open until something occurs, and then you can come in and make such suggestion as may be deemed necessary. I now hold it in abeyance.

See S. C. *ante,* 269.