WOOLLEY et al. v. SHAW, Dist. Judge.

No. 31061. Feb. 23, 1943.

*136 P. 2d 398.*

Scott Hendon, of Shawnee, for petitioners.

Disney, Wheeler, Raynolds & Wheeler, of Tulsa, for respondent.

Tom C. Wyatt, of Shawnee, for District Court of Pottawatomie County and its Receiver.

BAYLESS, J. This is an original proceeding in this court wherein W. W. Woolley and Ed Highfill petitioned for a writ of prohibition directing the Hon. Oras A. Shaw, judge of the district court in and for Tulsa county, to desist from further proceedings or the exercise of further jurisdiction in relation to the matters set out in the petition.

It is alleged generally that an action was already pending in the district court of Pottawatomie county, Okla., involving the subject matter attempted to be litigated in the action filed in Tulsa county, at the time the later action was filed. We think a more detailed statement of the allegations in the petition for writ of prohibition and response thereto will be helpful at this point.

May 12, 1942, action No. 19013 was commenced in district court of Pottawatomie county by C. L. Jenkins against Woolley and Highfill, seeking to foreclose a lien on the northwest of the northeast and the northwest of the southeast of 28-8-4, and on Varner well No. 1 and Peter's well No. 1, these last not being located by legal description; and for the appointment of a receiver and other equitable relief.

May 16, 1942, Adam Butler intervened in action No. 19013, claiming to own three-sixteenths of the seven-eights working interest in northwest of the northeast of 28-8-4 and seeking to have a receiver appointed for the thirteen-sixteenths interest owned by Woolley and Highfill in order that their interest might be charged with the expenses of certain developments and his three-sixteenths interest be absolved.

May 18, 1942, Woolley and Highfill filed a response to the petition of Jenkins and the plea of intervention of Butler insofar as those pleadings sought the appointment of a receiver.

May 19, 1942, an order was made continuing the hearing upon the applications for the appointment of a receiver until June 4, 1942.

May 21, 1942, Woolley and Highfill settled with Jenkins and Jenkins dismissed his cause of action against them with prejudice.

May 22, 1942, Woolley and Highfill filed an answer to Jenkins' petition (although that petition had been dismissed) and a cross-petition against Butler. The land described in this cross-petition is the northwest of the northeast of 28-8-4. In this cross-petition they admit that three-sixteenths of the seven-eights working interest is in Butler's name, but they assert that John Catlett is the true owner thereof; they alleged that Catlett should be made a party defendant; they allege that they have expended certain money in drilling a well on this property and that Catlett's three-sixteenths interest is legally liable for a portion thereof which Catlett and Butler refused to pay and for which Woolley and Highfill are legally entitled to have reimbursement. They ask to have a receiver appointed to protect their interest in that respect. They also seek other relief with respect to this particular 40-acre tract.

May 23, 1942, an order was entered making Catlett a party defendant and service of process was thereafter accepted for Catlett and no question of his

being a party to action No. 19013 is presented.

May 29, 1942, Woolley and Highfill caused notice to be given of the hearing on June 4th of their application for the appointment of a receiver in action No. 19013.

June 2, 1942, action No. 70902 was filed in the district court of Tulsa county with T. C. Iglehart as plaintiff and Woolley, Highfill, W. P. Baze, Jr., and Mid-Continent Petroleum Company as defendants. The oil and gas interests described were said to cover 760 acres in sections 21 and 28 of 8-4, Pottawatomie county. Descriptions are not specific in some instances. For instance, it is alleged simply that the Varner A lease contains 40 acres in the northeast of section 28. It is to be supposed that this is the same as the northwest of the northeast of 28-8-4, heretofore described in action No. 19013 in Pottawatomie county, although there is nothing in the pleadings before us to definitely so establish. The descriptions are indefinite but are followed by general allegations that more definite and specific descriptions are not given because the descriptions are well known to all parties involved. Four causes of action were set out in this petition, but causes 3 and 4 were stricken and we need not consider them. In cause of action No. 1 it was alleged in substance that Iglehart, a geologist, obtained information with respect to prospective oil production on the lands involved and gave this information to Woolley for the purpose of enabling Woolley to take leases in the two sections with the understanding that Baze would furnish the money and that the leases thus taken should be owned by these parties in agreed portions. It is then alleged that Woolley took these leases in his own name, using Iglehart's information and Baze's money as expenses, and has refused to recognize the interest of Iglehart or Baze therein. Other appropriate allegations are made from all of which Iglehart seeks to have established a coadventure between himself, Wool-

ley, and Baze, to have their respective partnership or coadventure interests established and set out to each of them and to have an accounting. In the second cause of action Iglehart alleged that Woolley and Highfill procured from Mid-Continent Petroleum Company an advance of $10,000 to be charged against the runs from thirteen-sixteenths interest claimed by Woolley and Highfill and that Mid-Continent has or will claim lien against Varner lease to secure this advance and in this respect plaintiff's interests have been jeopardized and prejudiced. Based upon these and other appropriate allegations plaintiff seeks to have Mid-Continent Petroleum Company account to him for any sum which it holds, and a decree that any lien which it claims be junior and inferior to the interest of the plaintiff. At this point we notice that the only prayer for appointment of receiver is contained in the fourth cause of action, which all of the parties recognize as having been dismissed.

If the Varner A lease described above in action No. 70902 is the same land as the northwest of the northeast described in action No. 19013, then these two causes of action conflict at this point only as to that 40 acres.

June 2, 1942, summons was issued in action No. 70902 and was returned showing service on Woolley and Mid-Continent Petroleum Company. From allegations appearing elsewhere, we are given to understand that this service of summons on Mid-Continent Petroleum Company was quashed and that service was not perfected on this company until sometime in August, 1942.

June 4, 1942, in action No. 19013 an order was entered on application of Woolley and Highfill appointing a receiver for the three-sixteenths of the seven-eights working interest in northwest of the northeast of 28-8-4 owned by Butler for Catlett.

June 5, 1942 (keeping in mind that Mid-Continent had been served in Tulsa county but such service had been

quashed) Mid - Continent Petroleum Company filed an application in action No. 19013 seeking to intervene, and upon permission being granted filed a petition in intervention which covers the northwest of the northeast of 28-8-4 only. In this petition Mid-Continent set up that it was taking the oil runs under a division order which it set out. It also alleged that it had loaned $10,-000 to Woolley and Highfill against runs from the thirteen-sixteenths of the seven-eights interest owned by them and had a lien to secure the same. It alleged that others claimed interest in said lease. Based upon these and other appropriate allegations, Mid-Continent Petroleum Company asked for the protection of its interest and for the appointment of a receiver for the thirteen-sixteenths of the seven-eighths working interest and other relief.

June 5, 1942, in action No. 19013 the district court of Pottawatomie county, upon application of Mid-Continent Petroleum Company, appointed a receiver for the thirteen-sixteenths of the seven-eighths working interest in and to the northwest of the northeast of 28-8-4.

June 6, 1942, in action No. 19013 the district court of Pottawatomie county entered an order making T. C. Iglehart (plaintiff in the Tulsa county action) a party defendant in the Pottawatomie county action. It does not appear that service of summons had been perfected upon Iglehart at the time of the filing of the petition for writ of prohibition, August 5, 1942, although it is alleged that diligence is being used to perfect service upon Iglehart.

June 16, 1942, Woolley and Highfill filed an objection to the jurisdiction of the district court of Tulsa county in action No. 70902 based upon the prior action No. 19013 in Pottawatomie county.

June 23, 1942, the district court of Tulsa county heard this objection and sustained it as to the second, third, and fourth causes of action stated in the petition, but later amended the order to sustain the objection to the third and fourth causes of action only.

July 21, 1942, action No. 19078 was filed in the district court of Pottawatomie county with E. N. Jones plaintiff, and Woolley and Highfill as defendants, covering the east half of the west half and the northwest of the southeast of section 28-8-4 and the northwest of the southeast and the south half of the southwest of the northeast of 21-8-4 and the northwest of 21-8-4, wherein he claimed an interest in the so-called Bodkins and Boyd leases and asked for the appointment of a receiver to protect his interest.

July 21, 1942, in action No. 70902 in Tulsa county an order was entered upon application of Iglehart, which application is not before us, appointing a receiver for all of the leases heretofore involved or described except the northwest of the northeast of 28-8-4.

July 22, 1942, in action No. 19078 the district court of Pottawatomie county, upon application of Jones, plaintiff, and Woolley and Highfill as defendants, covering the east half of the west half and the northwest of the southeast of section 28-8-4 and the northwest of the southeast and the south half of the southwest of the northeast of 21-8-4 and the northwest of 21-8-4, wherein he claimed an interest in the so-called Bodkins and Boyd leases and asked for the appointment of a receiver to protect his interest.

July 22, 1942, in action No. 19078 the district court of Pottawatomie county, upon application of Jones, plaintiff, appointed a receiver for the northwest of 21-8-4 and the northeast of the southeast and south half of southwest of the northeast of 21-8-4. As nearly as we can make the various descriptions coincide, it appears that the order entered in Tulsa county the day before covered some if not all of these tracts of land.

July 28, 1942, in action No. 19013 in Pottawatomie county P. & H. Company intervened and filed a petition to foreclose a materialman's lien on leases on the following tracts of land: Northwest of northeast and northwest of southeast of 28-8-4 and northwest of southeast of 21-8-4. The two tracts described as being in section 28 had previously been involved in No. 19013 and the tract northwest of northeast of 28 and the northwest of southeast of 21 were probably described in the Tulsa county case No. 70902.

August 1, 1942, an order was entered consolidating No. 19013 and No. 19078 under No. 19013.

August 1, 1942, an amended order was entered in consolidated action No. 19013, setting out that orders theretofore made in No. 19013 and in No. 19078 appointing Hendon receiver over the thirteen-sixteenths of the seven-eighths working interest should be amended to include additional property within the receivership appointment. This amended order of appointment conflicts with the order appointing a receiver in No. 70902 with respect to many tracts of land, but does not conflict with the order of appointment of receiver theretofore made with respect to northwest of northeast of 28-8-4. We observe also that as to No. 1 Wilcox, No. 1 Varner, No. 1 Bodkin and B. C. Jones tract, there are no pleadings shown in No. 19013 that can serve as the basis for an application for the appointment of a receiver. Insofar as this record is concerned the Pottawatomie court entered the amended order appointing receiver without any party in No. 19013 having filed a pleading seeking relief against those tracts. It acted on the application alone. In the meantime, by an undated order entered in action No. 70902 in Tulsa county, a temporary restraining order was entered restraining all the parties named heretofore from interfering with plaintiff or the receiver and directing certain of them to turn over to the receiver appointed in Tulsa county all

of the properties involved in the order appointing a receiver by that court. This order was directed to the receiver appointed by the district court of Pottawatomie county although it does not appear that these parties ever appeared or submitted themselves to the jurisdiction of the district court of Tulsa county.

It is the theory of petitioner herein that the subject matter of all of these actions, generally speaking, is mineral interests in real estate located in Pottawatomie county, and that the district court of that county acquired a prior exclusive jurisdiction thereof by virtue of the filing of action No. 19013. In support of this position petitioner cites Lanyon v. Braden, 48 Okla. 689, 150 P. 677; State ex rel. Ketchum v. District Court of Tulsa County, 82 Okla. 54, 198 P. 480; Schofield v. Melton, 166 Okla. 64, 25 P. 2d 279, and other cases of like nature.

Respondent resists this petition for prohibition and in so doing relies upon Myers v. Garland, 122 Okla. 71, 251 P. 34, and Replogle v. Neff, 176 Okla. 333, 55 P. 2d 436, wherein it is held that a cause of action for the establishment of a partnership or coadventure and the adjustment of the rights of the parties thereunder is transitory and may be filed in any county where any of the partners may be served, and he insists that the fact that the partnership assets include real property located in other counties does not deprive the court of jurisdiction, it being generally held that the adjustment of the title to property is incidental to the equitable relief respecting the partnership. He also insists, on the authority of the decisions cited, that the court first acquiring jurisdiction retains it.

Both sides recognize that wherever there is a likelihood of two courts of concurrent jurisdiction coming to conflict in their orders with respect to specific property, the court first having jurisdiction of the specific property has exclusive jurisdiction. Black Panther

Oil & Gas Co. v. Swift, 69 Okla. 33, 170 P. 238. It will be observed from the recitation above that the order appointing receiver entered by the district court of Tulsa county in action No. 70902 did not include or cover the northwest of the northeast of 28-8-4, which had theretofore been put into receivership by the district court of Pottawatomie county.

We are of the opinion that the authorities cited and relied upon by respondent support his position insofar as the first cause of action is concerned and insofar as the jurisdiction of that court attached to the property described herein that had not been already brought under the jurisdiction of the district court of Pottawatomie county.

In this connection we observe that all of these cases hold that it is not necessary that seizure be made of real property in order to subject it to the jurisdiction of the court, but it is essential only that allegations with respect thereto be made sufficient to set the judicial mind in operation with respect thereto.

With this in mind and reverting to the recitation of the facts made above, it becomes apparent that the only real estate or mineral interest involved in action No. 19013 in Pottawatomie county prior to the filing of action No. 70902 in Tulsa county was the northwest of northeast of 28-8-4. Flanagan v. Clark, 156 Okla. 230, 11 P. 2d 176. The attention of the district court of Pottawatomie county was not called to any other real estate or to the mineral interest in any other tract of real estate than the northwest of the northeast of 28-8-4 until July 21, 1942, and at that time action No. 70902 had already been commenced in Tulsa county and the additional land attempted to be brought into the jurisdiction of the district court of Pottawatomie county in action No. 19013 had already vested exclusively in the district court of Tulsa county.

In each case, viewed apart from the other case, the power of the court over the parties and the subject matter was complete and perfect. In each case the court was asked to act with respect to personal, contractual obligations between the parties, and as an incident to each the court was asked to do something about some real estate. In the Pottawatomie county case the land is located within the territorial boundaries of the district wherein the court was organized, while in the Tulsa county case the land is located outside the confines of the court's territory. But in cases such as these, the jurisdiction of each court is coextensive with the state boundary. The Pottawatomie case began by involving only a small part of the 760 acres finally involved. The Tulsa case began later by trying to include all of it. The only arguments that logically can be made are: (1) the venue of the real estate, and (2) the possibility that the Pottawatomie case might spread out to take in additional land. We have already seen the first is not valid, and we feel the second is not logical. If a court once seizes some property, it would be illogical to say that no other court could seize other property because of the likelihood that the first court may wish to reach out and seize additional property. We deem it best to apply here the recognized rule that the court first seizing property within its jurisdiction shall retain it and other courts will be forbidden to interfere therewith.

With respect to the second cause of action in action No. 70902, in Tulsa county, which that district court first struck and later reinstated, we are of the opinion that the relief sought therein against Woolley and Highfill and Mid-Continent is not properly before the district court of Tulsa county, because it appears from the pleadings in all actions that the rights asserted in said second cause of action relate to interests involved in the northwest of the northeast of 28-8-4, which we have above held was in the exclusive jurisdiction of the district court of Pottawatomie county. As we have observed

before, the district court of Tulsa county in the later orders appointing receiver and taking other steps to protect its jurisdiction has not undertaken to act with respect to this 40 acres. We think this grows out of that court's recognition of the prior attachment of the jurisdiction of the district court of Pottawatomie county over that 40 acres.

The petition for writ of prohibition is denied insofar as the issues presented in the first cause of action in action No. 70902, except the northwest of the northeast of 28-8-4, are concerned; and the writ is granted insofar as the relief sought in the second cause of action is concerned, and the district court of Tulsa county is directed to dismiss that cause of action.

GIBSON, V. C. J., and RILEY, OSBORN, and ARNOLD, JJ., concur. CORN, C. J., and WELCH, HURST, and DAVISON, JJ., concur in part and dissent in part.

---

DAVISON, J. (concurring in part and dissenting in part). I concur in the majority opinion insofar as it recognizes that jurisdiction over a part of the property is vested in the district court of Pottawatomie county, but I am unable to agree with the conclusion announced insofar as it approves administration of the remainder of the property by a receiver appointed by the district court of Tulsa county. It is my opinion that the writ of prohibition should issue to prevent the district court of Tulsa county from exercising jurisdiction through its receiver over any of the leasehold estates situated in Pottawatomie county.

The jurisdiction of that court, insofar as it is being exercised in the ancillary receivership proceeding, should be relinquished and yielded to the district court of Pottawatomie county upon consideration of principles of comity.

While no effort will be made in this dissent to make a complete restatement of the facts, it is proper that some of the salient features of this litigation be again mentioned.

Time is an important element. Parties and issues involved in the litigation, as well as the location, and contemplated use of the properties involved, constitute other factors which claim a degree of consideration.

The proceeding in the district court of Tulsa county is herein attacked. It will be first summarized.

It was instituted on June 2, 1942. T. C. Iglehart is plaintiff therein. The petitioners herein, W. W. Woolley and Ed Highfill, together with W. P. Baze, Jr., and the Mid-Continent Petroleum Company, are defendants. In his petition the plaintiff alleges that he and the defendant Woolley entered into a mining partnership or joint adventure, having for its purpose the acquisition and development of oil and gas leases in an area in Pottawatomie county included within two adjacent sections of land, namely, sections 21 and 28 of township eight north (8N.) range four east (R.4E.) of the Indian Meridian.

The plaintiff also asserted that subsequent to the initial understanding the defendant Baze became interested in the enterprise by agreeing to furnish money to accomplish its purposes.

Iglehart further alleged that several leases aggregating 760 acres located in the area above referred to were acquired by Woolley in furtherance of the joint adventure, and that it was understood that he, the plaintiff, was to receive portions of the profits expected to be received from each of the leases, ranging from one-sixth to one-half in amount. He further asserted in substance that a dispute had developed over the respective interests and that a portion of his interests was being claimed by others interested in the joint adventure and also by Ed Highfill.

It was averred that production had been accomplished on some of the leases, and the Mid-Continent Petroleum Cor-

poration was made a party defendant on the theory that it is accountable for funds received from production of the partnership property. Iglehart sought a judicial declaration of the existence of a partnership or joint adventure and a dissolution thereof, together with an accounting. Ancillary to this action, the appointment of a receiver was sought.

The Tulsa county action was transitory in nature and could be instituted and maintained in any county of the state where service could be had upon some one of the alleged partners or coadventurers. Myers v. Garland, 122 Okla. 71, 251 P. 34; Replogle v. Neff, 176 Okla. 333, 55 P. 2d 436.

In this connection it should be observed that the defendant Woolley, although not a resident of Tulsa county, was served while temporarily there.

The ancillary remedy of receivership therein sought was appropriate even though the property sought to be placed under receivership was located outside the county (Replogle v. Neff, supra) unless, of course, for some reason the jurisdiction or authority to control the property rests or should rest in some other tribunal.

The petitioners take the position that an ancillary receivership in the Tulsa county district court action to take charge of the property situated in Pottawatomie county was improper because of the pendency of an action in Pottawatomie county by virtue of which the district court therein was the proper tribunal to exercise control thereof. They took the same position before the district court of Tulsa county and that court sustained it as to one of the several leases, but assumed control of the remainder of the leases in its own receiver appointed on July 21, 1942. The lease not included in the receivership was apparently excluded on the theory that it constituted the only property actually involved in the action then pending in the district court of Pottawatomie county. The question, then, is whether the litigation in Pottawatomie county was such as to require the district court of Tulsa county to refrain from assuming control.

Two actions are in the district court of Pottawatomie county. They may be differentiated generally by their respective docket numbers. One is No. 19013, the other, No. 19078. The properties are all included in the 760 acre total hereinbefore referred to.

Cause No. 19013 was instituted on May 12, 1942, by C. L. Jenkins, as plaintiff, against Woolley and Highfill to foreclose a lien on a portion of the properties. Later, July 21, 1942, cause No. 19078 was filed. Thus one of the Pottawatomie county actions was filed after the other, before the institution of the action in the district court of Tulsa county. The district court of Pottawatomie county had thus attained actual control of only a portion of the property situated in that county before the district court of Tulsa county undertook to assume jurisdiction.

The majority of my associates are of the view that the Tulsa county district court was free to assume jurisdiction over any and all property not actually previously under control of the other court.

In brief, the majority opinion approves a continuation of the receivership in Pottawatomie county and the jurisdiction in rem of the district court of that county over one of several leases situated there, but undertakes to preclude that court from exercising its jurisdiction over the remainder of such leases.

In so deciding the majority do not traverse any of the absolute rules of law which have been established in connection with the resolution of conflicts or potential conflicts between courts of concurrent jurisdiction. However, it overlooks comity as a factor to be taken into consideration. It fails to recognize that there are situations in which one court of concurrent jurisdiction should yield or relinquish its jurisdiction even though the existence of that jurisdiction is not subject to question.

A situation which requires the relinquishment of jurisdiction by the district court of Tulsa county upon consideration of comity is, in my judgment, presented in the case at bar. If this premise is correct, it follows that this court possesses the power and authority to require an adherence to the considerations which should govern the conduct of the Tulsa court, since we, as a court, are by constitutional mandate vested with authority and charged with the duty of exercising "a general superintending control" over that court as a part of our original jurisdiction. Article 7, sec. 2, Oklahoma State Constitution. Notice in this connection State ex rel. Freeling, Atty. Gen., v. Kight, 49 Okla. 202, 152 P. 362. Prohibition is an appropriate method of exercising this supervisory control. 14 Am. Jur. 468.

Collectively, the three pending actions involve ten oil and gas leases, all in Pottawatomie county and all in two adjoining sections of land in that county. The location of the property makes an administration thereof through a receiver appointed by the Pottawatomie county district court more practical and economical from a business standpoint, but it does not in itself constitute a reason for recognizing that tribunal as the proper seat of venue. It does, however, give an added force to purely legal reasons which support the venue and jurisdiction of that court.

Conscious of the practical considerations but deferring for the present the discussion thereof, I now direct attention to the purely legal principles which govern our decision and prescribe the limits of judicial discretion in the matter.

We have already noted that when the venue of an action is properly fixed in one of the district courts of this state, and a receivership is appropriate as an ancillary proceeding or remedy, the receiver may be authorized to possess, control, and manage property elsewhere within the state. Replogle v. Neff, supra; Myers v. Garland, supra; Schofield v. Melton, 166 Okla. 64, 25 P. 2d 279.

To this general rule authorizing the acquisition of control over property within the state, there is one unqualified exception of which cognizance has previously been taken by this court. That is, control of property cannot be assumed if another court of concurrent jurisdiction has already attained actual or constructive control. State ex rel. Ketchum v. District Court of Tulsa Co., 82 Okla. 54, 198 P. 480; Lanyon v. Braden, 48 Okla. 689, 150 P. 677; Schofield v. Melton, supra. If this were the only exception, the soundness of the conclusion announced in the majority opinion could not be questioned. However, the rule is otherwise qualified. There is another exception based upon well-reasoned authority. That is: When a court has obtained jurisdiction of a controversy in a cause therein pending, and the control of property is necessary to the exercise of that jurisdiction, another court of concurrent jurisdiction should not upon subsequent application attempt to seize the property. Comity requires that the latter court refuse to extend its jurisdiction to such property. Fundamentally, this includes the recognition that the appointment of a receiver is discretionary and not a substantive right, and that even when jurisdiction to make the appointment exists the exercise of a proper judicial discretion may require that the appointment be refused. Clark on Receivers (2d Ed.) vol. 1, pp. 371, 372; Tolbert v. Chisholm, 163 Okla. 92, 21 P. 2d 16; McDonald v. Bohling, 102 Okla. 243, 228 P. 783.

The two exceptions were concisely stated by the federal court in Empire Trust Co. v. Brooke, 232 F. 641, 146 C.C.A. 567, at 570-571:

"From these cases it appears that the rule may be invoked in two classes of cases: First, in cases where there has been a disturbance of the actual or constructive possession of the res in one court by the officers of another court of concurrent jurisdiction. Property in the actual possession of a receiver, appointed by one court, can in no event be disturbed by the action of a court of

concurrent jurisdiction. It is equally true that property in the constructive possession of a receiver of one court, who has been appointed and qualified, but has not reduced the property to his actual possession, cannot be taken from his custody or that of the court appointing him by the action of any other court of concurrent jurisdiction. The rule is without exception that the actual or constructive possession of one court through its receiver cannot be disturbed by another of concurrent jurisdiction. The second class of cases to be considered is that in which there is no interference with the possession, either actual or constructive, of one court by another court of concurrent jurisdiction, but only an interference with the jurisdiction of one court by another of concurrent jurisdiction by the taking possession by the latter of property, not in the possession actual or constructive of the former, but which may become necessary to the exercise of its jurisdiction in the progress of the cause pending before it. . . ."

Subsequently in the opinion it is pointed out that the basis of the exception is the infringement upon jurisdiction as distinguished from the interference with possession. It is therefore essential as a basis for the application of the rule that an identity of issues exist or at least such a similarity as to render probable a potential conflict of jurisdiction, and of course such conflict must have reference or potential reference to the same property. That is, it should be apparent that the jurisdiction of the first court may not be fully and properly exercised if the second court interferes and that the seizure of control of the property will constitute such an interference.

It is apparent that the application of these principles to any given case requires a careful analysis of the cause first instituted for the purpose of determining the probable extent of the jurisdiction to be exercised and the issues to be determined. (Notice in this connection Ingram v. Jones, 47 F. 2d 135, as well as Empire Trust Co. v. Brooks, supra.)

Thus the proceeding and issues in the cause first filed in Pottawatomie county, insofar as they antedate the proceedings in Tulsa county, demand careful consideration in this proceeding.

It has been noted that the Tulsa county case was instituted on the 2d day of June, 1942. In that action T. C. Iglehart is plaintiff and W. W. Woolley, W. P. Baze, Jr., Ed Highfill, and the Mid-Continent Petroleum Company are defendants. The plaintiff therein is asserting the ownership of a fractional interest in the several leaseholds based upon the asserted existence of an alleged partnership or joint adventure in which he claims to have been one of the partners or joint adventurers. He seeks a declaration of the partnership or joint adventure and dissolution thereof and the appointment of a receiver.

The first action instituted in Pottawatomie county antedated the Tulsa county action some 20 days. It was commenced by C. L. Jenkins, doing business as the Jenkins Supply Company, as plaintiff, against W. W. Woolley and Ed Highfill, as defendants. The plaintiff therein sought the foreclosure of materialmen's liens alleged to exist on four of the leasehold estates mentioned in the majority opinion. He asserted the existence of such liens to secure an alleged indebtedness of $4,335.77. He also sought the appointment of a receiver.

On May 15th one Adam Butler intervened in the action and filed a cross-petition in which he averred ownership of an undivided interest in a portion of the property. He also sought the appointment of a receiver.

In their answer and cross-petition Wooley and Highfill assert that Butler's ownership is in reality nominal only and is held in trust by him for one John Catlett, who was thereafter, on May 20th, made a party defendant. On May 21st Jenkins dismissed the action insofar as his petition was concerned.

It is at once apparent from the pleadings filed that, while the Pottawatomie county action at its inception was in-

stituted for the purpose of foreclosing a materialman's lien, it soon took on the added phase of an action to determine the ownership of fractional interests in the leased property upon which the liens had been claimed and new issues appropriate for the determination of such interests became an added feature in the action. After the dismissal of the petition to foreclose the lien (May 23rd) the major aspect of the case presented a controversy between claimants of fractional interests in the property.

The dispute did not nominally extend to all of the leaseholds later described in the Tulsa county action, but that was because Iglehart had not yet made any formal assertion of a claim.

It is apparent from a review of the entire record that the additional property later brought in dispute by Iglehart in the Tulsa county action was being operated and developed in conjunction with the property previously placed in litigation in the Pottawatomie county action. It was located in two adjacent sections of land and manifestly acquired on the theory that it was in the same producing area.

Iglehart himself, the plaintiff in the Tulsa county action, is asserting a related scheme of development and fractional ownership by himself, Woolley, and Baze which extends to all of the properties.

In Replogle v. Neff, supra, we said in paragraph 4 of the syllabus:

"Where one member of a partnership or joint adventure sues other alleged members thereof, it is competent for one of the defendants sued to assert by cross-petition against another defendant that the property held by such other defendant, and alleged by plaintiff to be a part of the assets of the main partnership, is really also assets of a smaller partnership or joint adventure, and to ask for a determination of his rights and an accounting as against his co-defendant and other parties to the action, for this is a necessary incident to the main action started by plaintiff, and equity will give complete relief to avoid multiplicity of suits."

If the jurisdiction of equity invoked for the purpose of determining a dispute between asserted partners comprehends a determination of the rights of a subpartnership on the theory that equity affords an opportunity for complete relief, it is apparent that for the same reason, when the aid of the court is invoked to determine the lesser relationship, its jurisdiction comprehends extension to the greater or more extended partnership if complete relief can be afforded by such comprehensive jurisdiction.

Thus the property is located in a single area in a single county. It is intended to be progressively developed as a single enterprise (Iglehart describes it as a joint adventure, which indicates singleness of enterprise; 30 Am. Jur. 679). In Pottawatomie county, where it is situated, litigation is already pending involving issues which constituted a controversy for the purpose of determining who was the owner of portions of the property accumulated in furtherance of the single enterprise. These issues in the progress of litigation could reasonably be expected to extend to the remainder of the property involved in the enterprise.

We therefore have before us a situation where there is sufficient identity of the issues, sufficient identity of the subject matter, and sufficient probability that the jurisdiction of the entire res would be essential to an exercise of the previously acquired jurisdiction of the district court of Pottawatomie county to require that the Tulsa district court of Tulsa county refuse as a matter of comity to appoint a receiver to take charge of the property or any portion thereof.

There is another rule applicable to receiverships which by analogy supports the position of the petitioners and demonstrates that courts look with favor upon unity in supervision of property through receivership.

It is the general holding that where a receiver has been appointed in connection with one pending action and another suit is filed involving the same property or the same and other property, in which latter case a receivership is also authorized and sought by the litigants, the proper practice is to enlarge the existing receivership. Lloyd v. Chesapeake, O. & S. W. R. R. Co., 65 F. 351; Wabash, St. L. & P. Ry. Co. v. Central Trust Co., 22 F. 272; State of Florida et al. v. Jacksonville, Pensacola and Mobile Railroad Co. et al., 15 Fla. 201; see, also, Bailey & Collins v. Ryan Cotton Oil Mill Co., 119 Okla. 57, 248 P. 321.

This court has already recognized that a receivership over a part of defendant's property may be extended to other property at the instance of a new party. Bailey & Collins v. Ryan Cotton Oil Mill Co., supra.

A distinction between the case at bar and the cited cases, of course, exists in the fact that one of the suits here involved is in a different court than the other two. The courts are also in different judicial subdivisions of the state, but both of the courts in receivership actions have jurisdiction coextensive with the territorial limits of the state. This difference should not be of vital importance except as to the legal method or mechanics of accomplishing the desired result.

Our power of superintending control is comparable to the power exercised by a court with respect to two different cases involving receivership pending before it. By its order of consolidation or other appropriate order it brings the two together and causes an expansion of the receivership in one to provide a harmonious administration of the estate. This court possesses the discretionary power to accomplish a similar result when actions are pending before two courts.

Reasoning, then, from the cases cited, supra, if the appropriate disposition, when the cases are in the same court, is to cause an expansion of the receivership in one to cover the requirements of the other, then the same result is proper when the cases are in different courts unless there is some reason that the parties litigant in one court cannot apply to the other for relief. No such reason is here shown to exist.

The remedy of receivership is subject to many abuses, and the rules of law with reference thereto should be applied in such a manner as to minimize the abuses.

Frequently, transitory actions are filed and receivership proceedings are instituted in connection therewith for the principal purpose of preventing a court more conveniently situated from obtaining jurisdiction. Such litigation is calculated to serve the selfish interest of a minority of the interested parties.

Since the rule of receivership is that the court first acquiring jurisdiction retains it, situations frequently arise where the convenience of one of many litigants prevails to the detriment and inconvenience of the others. Since the reward in such cases is to the speedy rather than the fair, inequitable situations with reference to venue must frequently be countenanced by the courts. But the possibility of unfair tactics should not be enhanced by expanding the opportunities through precedent which allows the greedy to prevail over litigants who are both swift and fair in the matter of choosing a court.

That the precedent herein established will have an unwholesome effect is well illustrated by the situation in the case at bar.

There is still another consideration, which although incidentally covered in a general way by the previous portions of this opinion, is worthy of special note. Persons claiming liens are asserting interests in the properties involved as, for instance, Bryan Poling and N. L. Heintzelman, interveners before the district court of Pottawatomie county. The normal venue fixed by law for the foreclosure of such liens is the district

court of Pottawatomie county. A recognition of the continuation of the receivership in Tulsa county forbodes added and unnecessary complications and confusion in the foreclosure of the liens or the determination of the existence thereof; complications which might and could well be avoided by an appropriate application of the rules of law previously mentioned.

I therefore entertain the view that the Tulsa court should yield to the district court of Pottawatomie county on principles of comity, and that the petitioners should prevail.

It is my view that the latter court should not only retain jurisdiction of that portion of the property which the majority opinion recognizes to be vested there, but that its jurisdiction should be recognized to extend to the remainder of the property insofar as the administration and control thereof through a receiver is appropriate.

For the reasons stated, I respectfully dissent in part.

I am authorized to state that Justices WELCH and HURST concur with the views herein expressed.