In the Matter of Gary Michael, Robin Lee, Sharon Lynn and Rickie HARRIS.

Marcene HARRIS, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. 41453.

Supreme Court of Oklahoma.

Dec. 13, 1966.

Supplemental Opinion on Denial of Rehearing Feb. 28, 1967.

Second Rehearing Denied June 13, 1967.

Wm. O. (Don) Evans, Tulsa, for plaintiff in error.

David Hall, County Atty., Tulsa County, and Ted Flanagan, Asst. County Atty., Tulsa County, for defendant in error.

BLACKBIRD, Justice.

There is involved here for review the decision of the trial court affirming the decision of the Juvenile Court of Tulsa County awarding the custody of four minor children to the Oklahoma Department of Public Welfare. The plaintiff in error Marcene Irene Harris, mother of the children prosecutes this appeal.

The mother and father of the children will sometimes be referred to as "mother" and "father". The grandparents of the children will sometimes be referred to as "paternal grandparents" or "maternal grandparents".

The children involved here are Sharon Lynn Harris, born March 24, 1955; Gary Michael Harris, born June 11, 1957; Robin Lee Harris, born April 13, 1960; and Rickie Harris, born April, 1962. Rickie died in a foster home during the pendency of this litigation and we are concerned only with the custody of the remaining three children.

Plaintiff in error contends that the trial court erred in not granting her a jury trial. After the case had been called for trial and the first witness commenced testifying, counsel stated orally: "Your Honor, that the petitioner requests a jury trial at this time, which—in order—well, just request a jury trial." This is the first request made for a jury trial either orally or in writing.

The Oklahoma statute creating a juvenile court for hearing matters relating to the custody of minor children specifically provides that the hearing shall be "informal" and "without a jury." Title 20, O.S.1961, § 821 reads:

"All cases of children shall be heard separately from the trial of cases against adults, and without a jury. The hearings shall be conducted in an informal manner, and may be adjourned from time to time. Stenographic notes or other transcript of the hearings shall be required only if the court so orders. The general public shall be excluded and only such

persons admitted as have a direct interest in the case."

The appeal here is from an order of the court changing the custody of minor children as distinguished from an order declaring the children to be dependent and neglected. The problem of the custody of these minors has been before the Juvenile Court of Tulsa County for more than eight years. Gary, on petition of the Welfare Department was by order of the Juvenile Court of Tulsa County entered on May 8, 1959, declared a neglected child and custody awarded to the Juvenile Court Shelter. The matter was reviewed on November 19, 1959, and the child returned to his parents but he remained a ward of the court.

Marcene Harris and John Harris, mother and father of the children involved herein, on July 29, 1960, filed a petition in the Juvenile Court of Tulsa County stating that they were unable to provide a suitable home for the children and requesting the court to place the children in a home. The court entered an order placing the children in the custody of the Whitaker State Home at Pryor, Oklahoma, where they remained until December 1, 1960.

■ They were returned to the temporary custody of the parents but continued to remain wards of the court. They were removed from the custody of the parents and returned to the care and protection of the Welfare Department on August 5, 1963. The juvenile court, at a hearing on January 10, 1964, permanently fixed the custody of the children in the Welfare Department which order was affirmed by the district court on June 30, 1964. This appeal being from an order of the court changing the custody of the children as distinguished from an order determining them to be neglected and dependent, plaintiff was not entitled to a jury trial as a matter of right. Ray v. Woodard, Okl., 377 P. 2d 216.

■ Plaintiff in error contends the trial court erred in not allowing a minor child to testify as a witness. This contention is not assigned as error in the petition in error and is therefore waived. State ex rel. Shull v. Hinkle, 143 Okl. 33, 287 P. 722; Lookabaugh v. Epperson, 28 Okl. 472, 114 P. 738.

■ In the trial court there was some discussion concerning the Welfare Department being required to produce the children in court. Plaintiff in error did not subpoena the children as witnesses nor offer them as witnesses. At the time of the trial, Robin was four years old, Gary was seven years old, and Sharon was nine years old. As the children were not tendered as witnesses, the trial court made no ruling as to their competency. Such issue is therefore not before us. See Myers v. Diehl, Okl., 365 P.2d 717, 721, 722, citing In re Cully's Estate, Okl., 276 P.2d 250.

Turning now to the merits of the litigation. Plaintiff contends the judgment of the trial court is not sustained by the evidence but is contrary to the evidence and law. In affirming the order of the juvenile court placing the custody of the children in the Welfare Department, the trial court stressed the fact that the mother in several instances had voluntarily surrendered the custody of her children to others.

Her marriage to Harris was the third marriage for Marcene Harris. She first married LeRoy Rutledge. No children were born of this marriage, and it terminated in divorce. Her next marriage to one Dozier also terminated in divorce, but a female child, Barbara Dozier, was born of it. Barbara is now 18 years old and with the consent of her mother has always made her home, and lived, with the mother and stepfather of Marcene Harris.

Three other children not involved herein were born to Marcene and John Harris. John Duwayne Harris was the first. At the age of two, John was delivered by his parents to the custody of Mr. and Mrs. C. D. Harris, the father and mother of John Harris. The child remained with its paternal grandparents until its death from leukemia at the age of 12. Marcene Harris

testified that the child was left with his paternal grandparents because he was small and she was having trouble with her husband, John Harris.

Donald Lee Harris, whose date of birth was not established was first delivered to the custody of the parents of John Harris. These paternal grandparents then gave his custody to a couple by the name of Hooper. After a year, the Hoopers adopted Donald Lee. The procedure followed in this adoption is not shown in the record but it may be assumed that the consent of the parents was necessary for the adoption.

James Albert Harris, whose date of birth was not established, was delivered to a couple by the name of Higgins, apparently with his natural parents' consent, and has always made his home with the Higgins. There is nothing in the record indicating his adoption.

Marcene Harris testified that these three children were each babies at the time they were delivered to other parties. She further testified that she wanted to obtain the return of these children but that her husband, John Harris, objected and said that some of them did not belong to him. Two of the children are apparently still in the custody of the parties indicated.

The mother explained that it was necessary for her to surrender the custody of these children to others because of conflicts with her husband and she felt the children's best interests would be served by delivering their custody to others.

In 1960, this mother joined with their father in voluntarily surrendering the custody of the children involved herein to the care of the Welfare Department. She stated that she and her husband were quarreling and drinking and she did not feel she was able at that time to provide a suitable home for them.

The paternal grandparents of the children, C. D. Harris and Mamie Harris, testified that during the years 1961–1962–1963 they observed their son John Harris in his home and also in the home of the witnesses.

He drank excessively at times and Marcene drank with him. The witnesses observed both Marcene and John on several occasions when they both were intoxicated. The children were healthy, but unruly, and hard to discipline. John and Marcene would be away from home on trips about four or five times each year. On some of these occasions, the children would be left in charge of a baby sitter or placed in nurseries. On one occasion a baby sitter, Bess Wilson, called the grandmother in an attempt to locate the parents. While engaged in drinking bouts, the parents would quarrel and curse in the presence of the children. The children on some occasions would use curse words. They testified that the parents provided the children with proper food and medical attention. On one occasion the mother left two small children alone while taking the older children to school. The grandfather admitted talking to the Welfare Department about the children in the early part of August, 1963. He testified that neither Marcene nor John were fit parties to have the custody of the children.

A police officer testified that on August 11, 1963, he found Marcene Harris lying in the front seat of a taxicab asleep and drunk.

The Welfare Department removed the custody of the children from the parents in August, 1963. A case worker for the Welfare Department testified that when she first observed the children, at the time the Welfare Department assumed custody, Robin was a child of high temper inclined to throw tantrums, lie down on the floor, scream, yell, and kick up her feet. Gary was a very belligerent child, would pick a fight with anyone, and would hit, scream, and yell. Sharon was pouty and sullen with a very demanding way. She was given to pilfering from her foster parents and would not tell the truth when confronted with the act she had done. The children indicated a lack of training in the home. She further testified that she has observed the children since they have been under the care of the Welfare Department,

and Robin has made considerable change. Her temper tantrums have ceased. Her table manners have improved, and she is becoming a sweet, gracious, little girl. The case worker attributes this change to constant loving training which she did not receive in the home of her natural parents.

The record reflects many instances in which the mother under the most adverse circumstances made an honest, sincere effort to properly care for these children. The children were restored to their parents by order of the juvenile court on December 1, 1960, and on June 25, 1962, the counseling services of the Welfare Department were terminated.

During the years 1962 and 1963 the mother arranged for the spiritual welfare of these children. She took them to Sunday school and attended Sunday school and church herself. The Sunday school teachers testified that the children were well mannered, properly adjusted, dressed neatly, and appeared to be healthy and happy.

The mother arranged for the little girl Sharon to attend "Bluebird" meetings. The sponsor of the "Bluebird" group testified that the mother displayed an interest in the work of the organization and that Sharon was a healthy, well mannered, little girl.

In the fall of 1962 the mother enrolled the two older children in school. They were about average students during the 1962–1963 term. Sharon's teacher testified that she was a healthy, well adapted little girl.

Sharon had a little trouble with her arithmetic and the mother arranged to have her tutored in this subject.

The evidence is almost undisputed that the mother was a good housekeeper and maintained the home in a neat, clean and orderly manner.

In cases involving the removal of custody of minor children from their natural parents serious consideration must be accorded to the natural parental affection parents have for their children. Currin v. Chadwick, 206 Okl. 148, 241 P.2d 947; Lew-is v. Sisney, 205 Okl. 599, 239 P.2d 787; Morris v. Morris, 81 Okl. 222, 198 P. 70.

On the other hand the law is well settled in this jurisdiction that in cases involving the custody of minor children the primary and paramount issue to be considered is the best interests of the child or children. Morrow v. Morrow, Okl., 383 P.2d 24; In re Pulliam, Okl., 369 P.2d 646; Duffy v. King, Okl., 350 P.2d 277; Hurt v. Hurt, Okl., 315 P.2d 957; Gowin v. Julius, Okl., 279 P.2d 954; Smith v. Williams, 182 Okl. 531, 78 P.2d 808; Phelps v. Young, 149 Okl. 120, 299 P. 461; Ex parte McDaniels, 144 Okl. 65, 289 P. 704.

In Sinclair v. Sinclair, Okl., 392 P.2d 750, this court held that the only issue to be considered is the welfare of the child.

In other cases involving the custody of minor children it is a proper function of this court to review the entire record and in the event the judgment is contrary to the weight of the evidence or contrary to law, to reverse the case. Currin v. Chadwick, supra. We have carefully reviewed the entire record in this case. The judgment of the trial court, although based on conflicting evidence, is well supported by competent evidence and is not contrary to law. It will not be disturbed by this court on appeal. Lyman v. Lyman, Okl., 390 P.2d 513; In re Pulliam, Okl., supra; Siler v. Siler, Okl., 350 P.2d 510; Russell v. Russell, 208 Okl. 41, 253 P.2d 136; House v. House, 207 Okl. 238, 249 P.2d 113.

Judgment of the trial court affirmed.

### SUPPLEMENTAL OPINION ON REHEARING

On petition for rehearing, plaintiff in error contends that the opinion heretofore promulgated herein is contrary to Crawford v. Young, Okl., 397 P.2d 497, in which we held:

"3. When a district court in a divorce proceeding fixed custody of minor child involved and such order was final and not appealed from, *the court was without jurisdiction to order the matter transferred to the juvenile court for investiga-*

*tion and disposition of custody,* and proceedings attempted in such juvenile court were without authority of law." (emphasis added)

It will be remembered that, in the present case, the Juvenile Court of Tulsa County first assumed jurisdiction over the Harris children's custody, and they were made wards of said court, and sent to the Whitaker State Home for their "care and protection, until further order of the Court" under said court's temporary order of July 29, 1960. Said court thereafter retained, and exercised, that jurisdiction continuously, specifically refusing to relinquish it by including "until further order of the Court" provisions in its subsequent orders, until long past the filing, in the District Court, of Mr. Harris' petition for divorce on August 5, 1963, and the trial of that divorce action in October of that year, and until entry of the Juvenile Court's order of January 10, 1964, placing (permanent) custody of the children in the Department of Public Welfare, which said order was thereafter appealed to the District Court for trial de novo, and out of which trial de novo the present appeal arose.

 The District Court's order of October 1, 1963, in the Harris divorce case, finding that "the question" of the children's custody "should be referred to the Juvenile Court" may reasonably be construed as a recognition, by the divorce court, of the Juvenile Court's previous assumption of jurisdiction over that matter, and is compatable with the long established rule in this jurisdiction that when a court of concurrent jurisdiction has assumed jurisdiction over a case, its authority over it, subject to review by the appellate court, is exclusive until the case is entirely disposed of, and no other court of concurrent jurisdiction may interfere with the first court in the handling and disposing of the litigation. Crawford v. Young, supra; Woolley v. Shaw, 192 Okl. 107, 136 P.2d 398, syllabus 1; 20 Am.Jur.2d, Courts § 128, p. 481. Jurisdiction of a court once acquired is not lost, or divested, by subsequent events.

Pine v. Superior Court of Seminole County, 172 Okl. 70, 39 P.2d 530; 21 C.J.S. Courts §§ 93, 94, pp. 143 and 147.

■ As will be observed, the foregoing facts clearly distinguish this case from those in Crawford v. Young, supra, in which there had been *no juvenile court proceedings prior* to the divorce court's order certifying, to that court, the matter of the custody of the child there involved. And the above demonstrates that plaintiff in error's theory that the commencement of the Harris divorce action divested the Juvenile Court of its jurisdiction over the Harris children's custody, is without merit.

We adhere to the previous opinion promulgated in this case, and the petition for rehearing is denied.

All Justices concur.