**TRAVELERS INSURANCE CO. OF HARTFORD, CONN., v. BAKER.**

No. 27252.   March 1, 1938.

Eugene S. Wells and Dan Mitchell, for plaintiff in error.

Wilson & Wilson, for defendant in error.

CORN, J. This is an appeal from a judgment rendered in the district court of Garfield county, quieting defendant in error's title to 40 acres of a 145-acre tract. Hereafter the plaintiff in error will be referred to as defendant, and defendant in error as plaintiff, as they appeared in the trial court.

An unfortunate accident in earlier years had rendered this plaintiff largely incapable of handling ordinary business transactions. The plaintiff's half brother, a man of means, in 1906 deeded the plaintiff a half interest in the 40 acres involved, with the evident intention of providing for this half brother. In 1909, he gave the plaintiff a deed for the remaining half. The plaintiff had gone into possession, had improved the property, and at all times exercised full and complete control over the land.

In a period of two years' time, while legal title was in him, the plaintiff gave seven mortgages on the property. Finally, in 1914, one Manatt foreclosed a mortgage he held and took a sheriff's deed, but the plaintiff continued to make it his home and farmed the land. In 1925, to settle the matter, and evidently to insure that the plaintiff should always have a home, L. M. Baker bought back the title Manatt had by virtue of the sheriff's deed, and gave the land back to the plaintiff. However, this time he retained the legal title in his own name to prevent the plaintiff from again incumbering the property, but the plaintiff held complete possession and control, and it was always understood that it was "Leon Baker's land." He farmed the land, planted an extensive orchard, supporting himself by selling fruit therefrom, and built a second house on the premises after the first was destroyed by fire.

In 1925, about two years after the property had been given back to the plaintiff, the donor encountered financial difficulties and gave the defendant a mortgage to secure a loan on the farm, and a commission mortgage to Atkinson, Warren & Henley Company. In 1932, the commission company foreclosed its second mortgage without making this plaintiff a party to the action, took judgment, and then conveyed all interest to the defendant, the holder of the first mortgage. In 1934, the defendant attempted to lease the entire 145-acre tract to plaintiff's nephew, but could not get possession of this 40 acres from the plaintiff.

Later, in 1934, the plaintiff filed suit to quiet his title as to the 40 acres, naming L. M. Baker's two heirs, his administrator, and the defendant herein all parties defendant. The defendant did not appear, and the plaintiff, being anxious to settle the matter, carried on communications with the defendant, relative to settlement without litigation. Two of the defendant's agents called upon the plaintiff, presumably to discuss the matter, but while there succeeded in securing a quitclaim deed from him in return for an option to purchase the entire tract. It was admitted at the trial that the purpose in granting this option was to get the plaintiff to execute this deed, although they never expected that the plaintiff would be able to use it.

May 22, 1934, plaintiff's title was quieted, but defendant entered no appearance. By agreement this judgment was vacated and the defendant filed an answer, denying the plaintiff's claim and setting up the quitclaim deed, the validity of which the defendant denied in his reply. Trial was to the court without a jury.

The trial judge rendered judgment for the plaintiff, quieting his title. From this judgment the defendant appeals, setting up six assignments of error which are argued under one proposition: That "The Supreme Court on appeal in an equity case will examine and weigh the evidence, and if the judgment is not supported by the evidence or is against the clear weight thereof, will reverse or remand the cause." This is based upon the defendant's contention that the trial court's judgment was not supported by the evidence, was against the clear weight of the evidence, and is contrary to law.

The first point to be decided is as to the strength and effect of the quitclaim deed executed by the plaintiff in 1934, for a stated consideration of $1 and the option to purchase the entire 145 acres. The defendant argues in this connection that equity will not set aside a conveyance for inadequacy of consideration alone, and this is the rule held to heretofore by this court. However, a qualification to the rule has been declared that, when there are circumstances showing unfairness in conduct, such a conveyance may be set aside. Miller v. Grey Eagle Oil & Gas Co., 164 Okla. 259, 23 P.2d 657, citing Wheeler & Motter Merc. Co. v. Wright, 64 Okla. 97, 166 P. 184.

Examination of the record discloses the manner in which the defendant's agents dealt with the plaintiff in obtaining this quitclaim deed. Two agents of the defendant called upon the plaintiff, an old and

infirm individual, who for years had been incapable of transacting even ordinary business affairs. If not wholly incompetent, he was at least unable to cope with these men with whom he dealt in a business way. Indeed, it is surprising that, if, as the defendant claims, this plaintiff had no interest in this land, they should be so diligent in having two of their employees call upon the old, infirm individual for the purpose of having him execute a quitclaim deed in return for an option which they admitted they never contemplated his being able to exercise. Had the consideration been fully adequate, still the manner in which the dealings with the plaintiff were carried out would not be above reproach, in view of the fact that it was apparent to the defendant's agents as to just what kind of an individual they were dealing with, when they took from him a quitclaim deed under the guise of wanting to settle and compromise the matter.

The next problem to be decided is whether the plaintiff ever had title to the premises in question by gift from L. D. Baker. Nearly 25 years before this action was first commenced, the plaintiff first went into possession of this 40 acres of land. L. D. Baker gave him this land, and it was known and understood that it was his. He planted it to fruit trees, fenced it and built no less than three houses upon it, all of which he occupied as his own home. Nobody directed his use of the property, since it was considered by everyone as belonging to him, and there can be no dispute that it was the clear intention, and so expressed by L. D. Baker to others, that the plaintiff should have this land.

Under such a state of facts there are sufficient grounds for saying that the plaintiff did obtain title to this 40 acres by a parol gift from L. D. Baker. In the case of Mackall v. Mackall, 135 U. S. 167, 10 S. Ct. 705, 34 L. Ed. 84, the Supreme Court of the United States. in holding that a conveyance of real estate by parol gift was valid, made the following statement:

"A party who receives a parol gift of real estate, enters into possession and expends money in improvements thereon, presents equitable considerations which will uphold a decree establishing a subsequent conveyance as a confirmation of his equitable title."

The authorities are unlimited as to the point that for a gift to be valid there must be: (1) Intention to give; (2) delivery; and (3) acceptance. The evidence herein fully establishes that all three elements were present. In Nolan v. Mathis, Adm'r, 134 Okla. 70, 272 P. 857, this court, in passing upon the question of a parol gift of real estate, laid down the following rule in paragraph 4 of the syllabus:

"To sustain a parol gift of real estate the evidence in support thereof must go further than a mere preponderance: the same must be clear, explicit and convincing as to every element necessary to constitute such a valid gift."

See, also, Harmon v. Kerns, 169 Okla. 290, 36 P.2d 898; Sands v. Dildine, 175 Okla. 520, 54 P.2d 171; and Hickman, Ex'r, v. Barrett, 175 Okla. 262, 52 P.2d 40, as to what is required before a gift can be declared valid.

This, then, brings us to the question of the effect of L. D. Baker's mortgaging the entire tract of land, under which mortgage the defendant now asserts ownership. Obviously, different reasons suggest themselves as to the reason for L. D. Baker's including the entire tract when he mortgaged to this defendant. The most plausible reason is that he perhaps felt that he would enhance his chances of securing the loan if so much was offered as security, and so mortgaged the entire premises when taking the loan, knowing at the time the property was not really his.

The defendant's agents examined the property when recommending the loan, and certainly must have had knowledge that someone other than the mortgagor was occupying a portion of the property, when they saw the plaintiff's 40 acres, separately fenced and upon which he had placed his own buildings and improvements.

The evidence being sufficient to sustain the judgment of the trial court, the judgment was not against the clear weight of the evidence, nor contrary to law. Judgment of the trial court is therefore affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY and PHELPS, JJ., concur.