**HARVEY v. PRIBIL.**

No. 35689.

Supreme Court of Oklahoma.

July 14, 1953.

McKnight & Edwards, Enid, for plaintiff in error.

Elam & Crowley, Enid, for defendant in error.

CORN, Justice.

Plaintiff is a widow, about 75 years of age at the time she brought this action. July 5, 1949, she conveyed a half section of land in Garfield County to defendant, her daughter, reserving a life estate therein. In May, 1951, plaintiff sued to cancel the deed and quiet her title to the property involved.

The amended petition alleged that for some months prior to execution of the deed defendant had been living with plaintiff who was in poor health; by reason of constant

urging by defendant and her children to make such conveyance, and in view of defendant's promise that she would stay with and care for plaintiff during the remainder of her life, she was prevailed upon to execute the deed and thus satisfy defendant's demands; following the conveyance defendant's attitude changed and she ceased showing plaintiff care and attention, and within four months moved away from plaintiff's home and refused to live with plaintiff or render care and assistance. Further, that defendant's conduct constitutes duress and undue influence, and that there had been a total failure of consideration, entitling plaintiff to cancellation of the deed and a decree quieting her title.

Defendant answered admitting having moved into plaintiff's home and execution of the deed as alleged, but denied plaintiff was urged to make the conveyance, and asserted same had been executed of her own free will and without duress or undue influence; that she moved into the home at her mother's request and at all times had been willing to stay and care for plaintiff, but had left the home in response to plaintiff's demands that she do so. Further, in order to go and live with plaintiff she had been forced to quit her employment, give up her apartment and sell her furniture in order to make the move; that she had fully performed the agreement insofar as permitted to do so and remained ready and willing to continue if permitted to do so by plaintiff; that the action resulted from undue influence of plaintiff's other children.

Plaintiff replied by general denial and an offer to do equity if, upon hearing it should be determined any terms should be imposed upon plaintiff as a condition to the relief sought.

Plaintiff's evidence was that defendant, one of her six children, lived with her for about 13 months beginning in 1949 and the deed was executed after she had been there some time, defendant said she would stay and care for plaintiff, who was aged and infirm, and she felt defendant would be satisfied but she was not; defendant had told her the deed would be the best way to handle the property since plaintiff was ill and advanced in years. A visiting relative had told her about handling his property in this fashion, and she finally agreed to go to Enid, Oklahoma, and make the deed in order to avoid trouble and "have peace in the family." Defendant was not satisfied and they fussed and finally she told defendant it would be better if she left. Plaintiff admitted her other children were dissatisfied, and that she might not have filed the suit had it not been for them. Plaintiff also testified defendant worked at the farm chores, but that they could not get along; defendant wanted the farm and defendant's children had asked her to make a deed.

Surrounding execution of the deed the evidence showed plaintiff, accompanied by defendant and a relative, went to a real estate dealer's office in Enid. The operation and effect of such conveyance was explained to her and she executed same of her free will, without there being any special agreement as to what should occur in the event defendant did not stay. The scrivener did not know whether the deed was intended as a gift, and did not recall any special condition that defendant was to stay and care for plaintiff as long as she lived, although it was witness' impression the consideration for the deed was defendant's agreement to stay and care for her mother for an indefinite period of time.

Evidence was introduced in defendant's behalf that plaintiff was ill and needed help and defendant went and stayed with her about a year, carrying on most of the farm chores. Defendant testified she visited plaintiff as often as possible and in June, 1949, learned her mother needed help; she gave up her employment and her home, took some of her furniture and moved to the farm where she cared for plaintiff and did physical labor around the farm. The deed was executed because her mother had decided to handle her property in such fashion, but no definite time was fixed, although she intended to stay as long as she was needed. During her stay plaintiff got better and defendant finally left because plaintiff was dissatisfied with her and did not want her there; that they fussed, but she still was willing to go back and care for plaintiff if permitted to do so and plaintiff needed help, but would not go back under same con-

ditions as when plaintiff sent her away. Defendant's evidence, however, also showed that she had never visited her mother after she left plaintiff's home in 1950. Plaintiff made things so miserable she could not stay; her children did not ask plaintiff to make a deed and that she had not done so, although she had suggested fixing matters so there would be no argument later. Defendant had not returned to plaintiff's home because she had been ordered off the place. There was evidence showing defendant's children at least mentioned to plaintiff that she should fix her property so there would be no difficulty over it.

There was other evidence corroborative of defendant's theory that plaintiff voluntarily executed the deed in order that defendant might have the property, and that no specific time or conditions were required as consideration for execution thereof. Defendant also introduced evidence to establish her earning capacity and the amount of loss sustained from having given up her employment, selling her furniture, and the money expended while she was living with plaintiff.

After hearing all the evidence the trial court took the case under advisement and thereafter rendered findings of fact and conclusions of law.

The court found the facts surrounding plaintiff's ownership of the property and that conveyance thereof had been made voluntarily, and without duress or fraud; discord had arisen between parties so it was impossible for them to live together and carry out the agreement that defendant should live with and care for plaintiff; defendant had sustained $4,067 damages as a result of having accepted plaintiff's offer. Because of discord between parties it was impossible to carry out the contract which required defendant to live with and care for plaintiff, but that plaintiff could be restored to her property without manifest injustice to defendant.

The court concluded as a matter of law that:

"Where, as here, a person has conveyed property in consideration of support, and a dispute thereafter arises between the parties so that it becomes impossible to perform the conditions and agreements made in consideration of the execution of the deed, Courts of equity have the power and should restore the property to the grantee if it can be done without manifest injustice to the grantee."

Further, that cancellation of the contract was proper under the findings of fact and defendant should be reimbursed for the damages sustained from having accepted plaintiff's offer. Judgment was entered cancelling the deed and quieting plaintiff's title, and ordering plaintiff to pay the sum of $4,067.

The first proposition urged for reversal of this judgment is that the trial court may not call witnesses and by the testimony elicited from such witnesses inject new issues into a case and then render judgment upon such evidence. The basis of this contention is as follows. Plaintiff's amended petition alleged plaintiff had received no consideration for the deed, and that there was nothing to offer defendant by way of restoration since defendant had given plaintiff nothing to restore. At the trial, after both sides had rested, the judge recalled defendant and interrogated her as to the income received from her employment prior to the time she went to live with plaintiff, the loss she suffered from being forced to sell her furniture, and the amount of money she claimed to have expended for the benefit of plaintiff and in hiring farm labor. It was largely upon this evidence that the trial court found the amount of damages for which judgment was rendered in defendant's favor.

It is urged that defendant did not ask for money judgment, and the trial court, upon his own motion, having elicited such testimony from defendant this amounted to injecting a new issue into the case, so that the judgment rendered was not within the issues presented by the pleadings. Relied upon as supporting this argument are decisions of this court to the effect that judgments not based upon the issues framed by the pleadings are erroneous and should be set aside. See Winters v. Birch, 169 Okl. 237, 36 P.2d 907; Electrical Research Prod-

526

ucts v. Haniotis Bros., 170 Okl. 150, 39 P.2d 42.

■ This argument is without merit. Plaintiff's reply, filed the day of trial, offered to do equity should the trial court determine the propriety of imposing any conditions upon plaintiff in granting relief. It is an elementary principal that where equity attaches in a proper proceeding, it will administer complete relief upon all questions properly raised by the evidence, regardless of whether raised specifically by the pleadings. Franklin v. Margay Oil Corp., 194 Okl. 519, 153 P.2d 486; Jackson v. Jackson, 196 Okl. 580, 167 P.2d 51.

The second contention is that an unconditional conveyance, executed and delivered to the grantee, constitutes an irrevocable gift. The supporting argument is an extended analysis of the basic requirements of a valid gift, and a comparison of the evidentiary facts herein in an effort to show the fulfillment of the requirements of a gift inter vivos. See Travelers Ins. Co. of Hartford, Conn., v. Baker, 182 Okl. 191, 77 P.2d 23; Harmon v. Kerns, 169 Okl. 290, 36 P.2d 898; Anselman v. Oklahoma City Univ., 197 Okl. 529, 172 P.2d 782.

■ Defendant's answer originally plead a promise by plaintiff to convey if defendant would give up her employment and move to plaintiff's home, and that such oral agreement and understanding was sufficient consideration for the conveyance. The day of the trial defendant was granted leave to strike such portions of her answer. Casual examination of defendant's answer discloses an entire lack of any intention upon defendant's part to rely upon the theory this conveyance was executed as a gift. In 38 C.J.S., Gifts, § 64, the applicable rule is stated:

"One seeking affirmatively to establish or enforce a gift inter vivos must allege and prove all the essential elements of a completed gift, particularly the fact of a delivery by the donor with intent to divest himself of title and to vest same in the donee."

However, disregarding for the moment this phase of the gift question, the evidence reflected by this record wholly fails to substantiate defendant's assertions that plaintiff's intentions evidently were that the conveyance was a gift. Proof of a gift inter vivos must be clear and satisfactory. Lucia v. Schaefer, 109 Okl. 167, 233 P. 444. Under this record we are not impressed with the argument that an unbiased analysis of the evidence discloses a gift to defendant by a voluntary conveyance with reservation of a life estate in plaintiff.

■ Defendant further contends that in cases of this kind, a grantor cannot rescind a deed if responsible for the grantee's failure to live with the grantor. The argument is made that the evidence shows plaintiff improved physically, became able to care for herself and thereupon adopted an antagonistic attitude toward defendant to the extent that discord so marred the relationship that plaintiff finally "ordered" defendant to move. This contention, and the argument in support thereof, is contrary to the record and the trial court's findings thereon. Defendant attempts to construe the evidence as disclosing that plaintiff's conduct alone caused the parties' difficulties. The trial court found the "dispute and discord between the parties" made it impossible for them to carry out the contract. The evidence showed that the dispute and discord were, to say the least, the result of the conduct of both parties, with defendant making no allowance for the age and physical condition of plaintiff. The court did not find that plaintiff's conduct alone was responsible for the defendant having to move. The evidence does not entitle defendant to greater consideration than that accorded her by the trial court.

Defendant further contends the plaintiff's remedy for defendant's failure to perform the contract to reside with her was for damages for breach of contract. Defendant relies upon Bush v. Bush, 142 Okl. 152, 286 P. 322 and Badgett v. Weldy, 193 Okl. 53, 141 P.2d 88 as supporting this contention. It is urged the real question is whether defendant's conversations regarding caring for plaintiff were sufficiently definite as to be consideration for the deed, and if so whether they were conditions or covenants. The argument is that such conversations had nothing to do with the conveyance; any

statements concerning defendant's staying with plaintiff were so ambiguous as to fairly establish that her stay was to be only for an indefinite period; under such evidence all plaintiff could recover would be damages for breach of contract.

The portions of this argument relative to whether the parties' conversations about defendant staying with and caring for plaintiff, and whether such oral negotiations were consideration for the deed, and the argument that such statements were so ambiguous and inconclusive as to establish that defendant only agreed to stay for an indefinite period, do not require extended discussion. Viewed in the light of practical knowledge of human affairs this argument is unpersuasive. To assume that plaintiff, 75 years old, infirm and bedridden, voluntarily conveyed away her homestead of a lifetime for no consideration other than defendant's agreement to reside with and care for plaintiff until such time as her health might improve and she could be up and taking active care of a farm of 320 acres overtaxes our credulity. Under these circumstances we are unimpressed by the assertion that defendant agreed to stay only so long as plaintiff needed or wanted her, and that since defendant remained until plaintiff's health improved and she requested defendant to leave, the conclusion must be that the "conditions" which provided consideration for execution of the deed were fulfilled. The third phase of the argument mentioned above logically may be considered in connection with the following proposition.

Defendant's sixth proposition is that rescission of a deed cannot be granted where the parties cannot be placed in status quo. Once again the argument is that plaintiff and defendant had no definite agreement as to how long defendant was to care for plaintiff, and that the record supports the conclusion defendant did everything she agreed to do. Further, that even if entitled to rescind, plaintiff failed to give prompt demand and notice of rescission to defendant.

We believe the true rule, and the rule followed by this court, is best stated in 9 Am. Jur., Cancellation of Instruments, Sec. 31, as follows:

"According to many authorities, a grantor who conveys land in consideration of an agreement by the grantee to support, maintain, and care for the grantor during his lifetime, may, upon the neglect or refusal of the grantee to comply with the contract, have a decree setting aside the deed and reinvesting him with the title to the real estate. The intervention of equity in such cases is sanctioned on the theory that the neglect or refusal of the grantee to comply with the contract raises a presumption that he did not intend to comply with it in the first instance, and that the contract was fraudulent in its inception, wherefore a court of equity will not permit him to enjoy the conveyance so obtained. * * *"

This rule has been recognized and applied in this jurisdiction since Spangler v. Yarborough, 23 Okl. 806, 101 P. 1107, 138 Am. St.Rep. 856.

In this connection defendant relies upon our holding in Moffatt v. Moffatt, 195 Okl. 498, 159 P.2d 531. Consideration of that case discloses a situation analogous to that herein considered. And, in that opinion we pointed out the inapplicability of Bush v. Bush, supra, Badgett v. Weldy, supra, to such situations.

Defendant, however, calls attention to Tate v. Murphy, 202 Okl. 671, 217 P.2d 177, 18 A.L.R.2d 892, wherein we did not adhere to the rule laid down in the Moffatt case, supra, but held substantial compliance with the terms of a contract for support and maintenance to be sufficient. We do not perceive the conflict between these two recent decisions which defendant seems to find. The salient feature of the Tate case simply is the determination that where subsequent events, such as insanity of the grantor, render exact compliance impossible, the grantee's failure to comply strictly with the agreement does not constitute a breach of contract or failure of consideration sufficient to justify cancellation of a conveyance. Such rule is based upon a fact situation foreign to that herein considered. We

528

are of the opinion the rule announced in syllabus 1 of the Moffatt case, supra [195 Okl. 498, 159 P.2d 532], controls herein. Therein it is held:

"Where a person has parted with his property in consideration for support for life and discord thereafter arises between the parties so that it becomes impossible to perform the conditions and agreements made in consideration of the execution of the deed, courts are disposed to restore to the grantor the property if it can be done without manifest injustice to the grantee."

Other matters are urged, and numerous decisions from this court and from other jurisdictions are cited and relied upon as supporting defendant's claim for reversal of this judgment. In view of what has been said heretofore we deem it unnecessary to deal specifically with such arguments or to analyze and discuss the cited cases.

After thorough review of this record we are of the opinion that plaintiff had no intention of making a gift by execution of the conveyance, but executed same with the sole intention that defendant should reside with and care for her during the remainder of her life. And, we are likewise of the opinion that the trial court properly found that it was impossible for the parties to carry out the contract requiring defendant to live with and care for plaintiff. For such reasons the trial court properly decreed cancellation of the conveyance.

Judgment affirmed.