**Helen Diehl MYERS, Plaintiff in Error,**

**v.**

**Nora L. DIEHL, Defendant in Error.**

**No. 39352.**

Supreme Court of Oklahoma.

Oct. 17, 1961.

Geo. W. Moser, Comanche, for plaintiff in error.

Bond & Bond, Duncan, for defendant in error.

BLACKBIRD, Vice Chief Justice.

Plaintiff in error and defendant in error are sisters. This appeal involves a controversy between them as to real estate, consisting of an undivided one-half interest in a 120-acre tract of land, an undivided one-fourth interest in a 40-acre tract (both unimproved), the minerals under two 80-acre tracts, and defendant in error's home in Duncan, Oklahoma, all of which is said to have a combined total value of $12,500. These parcels of real estate were described in five separate deeds, or conveyances, re-

citing a consideration of "One Dollar and other valuable considerations, in hand paid, the receipt of which is hereby acknowledged * * *", which defendant in error executed in her attorney's office, and delivered to plaintiff in error, on February 15, 1957.

The principal purpose of this action, instituted in November, 1959, by defendant in error, as plaintiff, against plaintiff in error, as defendant, was to cancel those deeds. The parties will hereinafter be referred to by their trial court designations.

All of the property, except the Duncan residence, had belonged to the parties' parents, who had divided it between themselves, when they were divorced in 1926. After the divorce, plaintiff, who has never married and is now more than 67 years of age, and has been in frail health most of her life, continued to live with her mother, in the family's former farm home, until the mother died in 1948. The father made his home with defendant, who, with her husband, has for several years operated a grocery store in Comanche, Oklahoma, in, or connected with, the couple's residence in that city.

In 1943, before she started receiving benefits through the State Public Welfare Department, the parties' mother deeded the farm, on which the two lived together, to plaintiff, along with apparently all of the other rural property involved herein, except one parcel, not completely described, which we may refer to as tract "X". The latter was deeded to plaintiff by her father in the fall of 1940, by way of paying off a promissory note for $600, which, earlier that year, he had executed and delivered to the mother. He deeded a different 80-acre tract to defendant; and thereafter died.

After the parties' mother died in 1948, plaintiff sold the farm home, after moving to Duncan. She applied its sale proceeds on the balance of the purchase price due on her newly acquired Duncan home, that, with the other above-mentioned real estate, is involved here.

In 1955, plaintiff became temporarily incapacitated from what she apparently feared might be a fatal illness, and was hospitalized. She gave defendant a power of attorney covering the subject real estate, as well as $500 in cash to put in her lock box for safekeeping and defrayal of her expenses. After her hospitalization for only two days, plaintiff's condition improved, and the power of attorney was never used, but defendant continued her custody of the cash, plaintiff had delivered to her, for some time afterward, paying some of her bills with part of it and deducting therefrom small amounts to meet plaintiff's periodic requests for cash. After a while defendant returned to plaintiff $342.25 as the unexpended remainder of that original fund.

It was after plaintiff had suffered recurring periods of illness in 1956, and the early part of 1957, and her funds were depleted to an insecure level, that she gave defendant the subject deeds, herein sought to be set aside, or cancelled. In her petition, plaintiff alleged the deeds were executed and delivered pursuant to an oral agreement between her and the defendant, that defendant would "take care of * * * (her) and furnish her with medical care and attention and the necessities of life as long as plaintiff lived." The ground upon which plaintiff prayed for the stated relief was that defendant had breached the agreement, resulting in a failure of consideration for the deeds. Notwithstanding this claim, plaintiff further alleged that defendant, during the period from the 1957 date of the deeds until the filing of the action, had furnished plaintiff with approximately $200 "worth of groceries", and prayed that defendant be allowed a lien for that amount on the properties involved.

After her filing of preliminary pleadings, and a court ruling hereinafter alluded to, defendant filed an answer, in which she admitted plaintiff's execution and delivery to her of the subject deeds, and alleged that she had not only "paid the consideration * * * set forth" therein, but had "* * *

for several years, cared for and looked after the plaintiff." She further alleged, among other things, that she had, for several years, given plaintiff any groceries she desired and that "as a sisterly act" she had taken her to, and offered to pay for, any doctor whose care she desired. As to the property which she, in substance, alleged was validly and irrevocably conveyed to her and that she now owns through the subject deeds, defendant alleged that by reason of "much" of the property having belonged to the parties' parents, she had an equitable interest in it, prior to the deeds; and that, upon the deeds' delivery to her, she went into possession of the property, and has since paid the taxes thereon.

At the trial, defendant introduced no direct evidence that the parties' mother's conveyances to plaintiff were made with the intention, or understanding, that any interest therein would belong to defendant, or be held in trust for her by plaintiff, except the circumstances that, on one occasion after the parents' divorce, defendant had cared for the mother about a month while plaintiff had the flu. Testifying on her own behalf, defendant claimed that the parties' father had placed the title to the hereinbefore mentioned Tract X in plaintiff's name, only for the remainder of his life; and, though she asserted an equitable interest in said tract, defendant denied that plaintiff had any comparable interest in the tract their father had given her, as aforesaid.

It was revealed by the testimony that, after her delivery to defendant of the deeds herein sought to be cancelled, plaintiff commenced receiving Social Security benefits of $29.60 per month in 1957 and 1958, and has supplemented that income with earnings as a baby-sitter, and from furnishing lodging in her home to some nurses. According to plaintiff's testimony, as long as the title to the property was in her name, her total income from it did not exceed $50 per month, which was no more than sufficient to defray the taxes and cost of the insurance thereon. In her testimony, defendant admitted that her payment of the taxes on the property (after its conveyance

to her) was made out of its income. Defendant's testimony contradicted plaintiff's, that the consideration for the deeds to defendant was a promise by her to defray the cost of plaintiff's needs the rest of her life, but her only attempts to explain directly why her sister executed and delivered the deeds, are found in her testimony on re-cross-examination by plaintiff's attorney, as follows:

"Q. And you never had any agreement with her? A. No, sir, she never asked me and we had no agreement.

"Q. She wanted you to have her land and she stripped herself of everything she owned just so you could have it for no reason? A. For no reason.

"Q. Yes? A. Well, I had been helping her. I had been giving her groceries for two years. And she knew that if there was any income on her land she would get part of it. * * *

"Q. She was ill, and she owned some land and minerals and her home and she deeded to you everything she owned and stripped herself of everything she owned so that you could have it for no reason? A. I never got any money off of the place.

"Q. Now Mrs. Myers, if you didn't have any agreement between you why did she deed you her property? A. I don't know what it was.

"Q. Why would she, in the absence of an agreement, * * *? A. I don't know why she did that, I guess out of the goodness of her heart, and I guess she wanted to pay me back for what I had done for her. I didn't have to take her in."

Plaintiff testified to having obtained groceries out of the defendant's store free of charge, but she also testified that she had been on a diet of baby food, cereal, milk, and bread for years; that the total price of such food had been only "about three dollars a week"; and she also testified, in substance, that part of her groceries had been purchased by her out of her own funds at stores other than the one owned and oper-

ated by defendant and her husband. The general tenor of plaintiff's complaint against defendant, as we perceive it from her testimony, is that defendant failed to offer to pay, or pay, her living expenses, other than groceries, and to furnish her with the medical attention she needed, which claimed obligation she seems to have regarded as comprising the major part of the consideration for the deeds. Pursuant to stipulation, plaintiff introduced a list of her own expenses, she had paid with her own funds. (A total of $492.39 of these appears to have been paid after the date that the deeds were executed and delivered.)

As a witness for defendant, her husband denied plaintiff's testimony, that several months before she commenced the action, he had told her to leave the Myers' grocery store and not to come back. He did not maintain that he and his wife had given plaintiff groceries as consideration for any deed, or deeds, but testified that the groceries were given to her because "she was my wife's sister." He further testified that there never had been a time, when, if plaintiff had asked for it, she could not have gotten money from him or his wife; and, at one place in his cross-examination, he inferred that plaintiff could have her property back, if they could get back what they had spent on her. He testified that no record had been kept of these amounts, but estimated that they aggregated "close to $2,000.00."

The evidence further revealed that, in 1958, plaintiff had unsuccessfully applied to the State Welfare Department for benefits, and was directed to the County Attorney about regaining title to the property involved here. According to plaintiff's attorney, plaintiff's transfer of the property to defendant was the reason her application for welfare benefits was denied.

Defendant's demurrer to plaintiff's evidence was overruled, and, at the close of all of the evidence, the trial court overruled demurrers to it interposed by both parties; and, though he formally overruled a motion for judgment then made by plaintiff, he thereafter rendered judgment in her favor, finding that defendant's promise, or oral agreement, alleged by plaintiff, had been entered into as the consideration for the deeds; that defendant had breached said agreement; and there had "been such failure of consideration on the part of defendant that said conveyances should be set aside and the property returned to plaintiff." Besides cancelling the subject conveyance, the court in its judgment, granted defendant judgment against plaintiff in the sum of $668.25 and decreed a lien in her favor on the property, to secure payment of said sum.

After the overruling of her motion for a new trial, defendant perfected the present appeal.

In her first proposition for reversal, defendant charges that the trial court erred in overruling a demurrer she filed to plaintiff's petition. Her theory is that plaintiff, by her action, was attempting "to change written instruments by alleged oral agreement" and the only way that relief from such instruments could be obtained, was by alleging and proving that her execution and delivery of the deeds in question was induced by fraud. Although defendant argues no particular assignment of error relating to admission of evidence, she also says, under this proposition that " * * * the lower court * * * should not have allowed oral testimony attempting to change terms of written contract."

 Examination of the record fails to disclose any ruling on this demurrer, as distinguished from a ruling on a motion which defendant filed to require plaintiff to make her petition more definite and certain. The only evidence of a ruling by the court, is a clerk's minute reciting: "Motion to make more definite and certain sustained in part and overruled in part. Twenty days given to answer." While defendant's demurrer, and motion to make more definite and certain, were combined, though separately designated, in a single written document, or pleading, the quoted minute fails to un-

equivocally show that the court ever ruled on the demurrer (see In re Cully's Estate, Okl., 276 P.2d 250); and furthermore, since defendant advances the same theory under other propositions, that she argues under this one, we will pass to them without further consideration of her "No. 1" proposition.

Under her second proposition, defendant bases her claim of error in the overruling of her demurrer to plaintiff's evidence, on her theory that plaintiff "having knowingly received and accepted the benefits * * *" of the conveyances in question, was, under Tit. 16 O.S. 1951 § 11, "* * * concluded thereby and estopped to deny * * *" their validity. She also sets forth, in the "abstract" as it were, and without showing its applicability to this case, the following statement: "Where a written contract is unambiguous, its terms cannot be changed by evidence Dehors the contract (citing cases)."

Considering defendant's argument as relating merely to claimed error in the trial court's judgment, as distinguished from its ruling on defendant's demurrer to plaintiff's evidence (since defendant waived the demurrer by introducing evidence on her own behalf, rather than appealing from the ruling on the demurrer) we are unable to perceive its applicability to this case, because it was defendant's position, all through the trial, that any and all benefits plaintiff obtained from her or her husband were independent of, and had no relation to, the subject conveyances, but were freely given, or furnished, because of charitable, or "sisterly", feelings.

Defendant's inference that plaintiff's action was, in effect, an attempt to change a contract by evidence dehors the record is also incorrect. Rather than an attempt to change the terms of any contract, plaintiff's action was to cancel deeds; and the general rule defendant quotes from 26 C.J. S., under her Proposition No. 5, supports the granting of such relief on account of failure, or refusal, of the grantee named

therein to perform his, or her, part of the agreement under which the deeds were executed and delivered. (Notice also the cases cited in Tate v. Murphy, 202 Okl. 671, 217 P.2d 177, 187, 188, 18 A.L.R.2d 892, also cited by defendant.)

Under defendant's proposition "No. 3", she contends that the trial court erred in finding that there was an agreement between the parties that defendant would support plaintiff. She refers to a portion of plaintiff's testimony as being all that was elicited to support such a finding. She also refers to the facts that plaintiff continued to pay her own bills, after her delivery of the deeds (as she had done before); that there is no evidence specifically showing that plaintiff discussed any such agreement with her attorney, nor had it reduced to writing in the deeds, or in a separate instrument, or contract; nor offered any evidence corroborative of her own testimony relative to this matter, as circumstances sustaining defendant's contention that there was no such agreement. We recognize that had defendant introduced persuasive evidence directly contradicting plaintiff's evidence, the circumstances mentioned might weigh heavily against plaintiff, but, as hereinbefore indicated, this did not occur. The hereinbefore quoted testimony defendant gave on her own behalf is both speculative and equivocal, and (as said concerning some evidence in Harvey v. Pribil, Okl., 259 P.2d 523, 527) it "* * * overtaxes our credulity." Apparently the trial judge found it difficult to believe—as do we—that any person in her right mind, faced with physical frailty, aggravated by advanced age, and with no more savings and/or income than plaintiff had, would divest herself of all of her property, including her home, for "no reason", or without being given in return some promise, or assurance, that her physical needs would be provided for.

Defendant's Proposition No. 4 seems to be directed toward claimed error in the court's findings that there had been a

failure of consideration for the deeds. She says: An equitable compromise of a long pending and doubtful question of title, antecedent service, or love and affection, are all good considerations for deeds; that "Mere inadequacy of consideration, standing alone, is not sufficient to set aside a deed"; and, in effect, that a deed may be valid and binding, even though itself a mere gift. Defendant does not show, and we fail to see, how any of these statements are applicable to this case, or show error in the trial court's judgment, especially in view of defendant's apparent concession that the true consideration (as distinguished from the recited one) for deeds may be shown to have not been given, and the deeds cancelled on that account. No "long pending and doubtful question of title" was proved in this case; and the evidence supporting plaintiff's alleged cause of action is more persuasive than any supporting defendant's position.

■ While it may be conceded that mere inadequacy of consideration is not sufficient, in itself, to justify setting aside a deed, the trial court's judgment appears to have been based on a substantial failure of consideration, which, authorities cited by defendant, and others, recognize as good ground for such relief.

Under her Proposition No. 5 defendant points to the money judgment decreed in defendant's favor as supporting her contention that, if there had been any such agreement as plaintiff claimed, it was complied with. She does not demonstrate, however, that this feature of the judgment is incompatible with, or contradictory to, a conclusion that defendant had failed, to a substantial degree, in giving plaintiff the consideration, previously agreed upon, for the conveyances.

As defendant's arguments have failed to demonstrate that the trial court erred in any of the matters about which she complains, its judgment is hereby affirmed.